Gerald C. GRIMAUD, John G. Bergdoll, and Matthew R. Battersby, Petitioners

v.

COMMONWEALTH of Pennsylvania, Honorable Yvette Kane, Secretary of the Commonwealth, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 2001.
Decided Aug. 19, 2002.
Publication Ordered Sept. 18, 2002.

John G. Bergdoll and Gerald C. Grimaud, Tunkhannock, for petitioners.

Jonathan F. Bloom, Philadelphia and Calvin R. Koons, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, DOYLE, Senior Judge,[1] and KELLEY, Senior Judge.[2]

## OPINION BY JUDGE LEADBETTER.

Before this court are cross-motions for summary judgment, filed by Gerald C. Grimaud, John G. Bergdoll and Matthew R. Battersby (petitioners) and by the Commonwealth of Pennsylvania, Matthew J. Ryan, as Speaker of the Pennsylvania House of Representatives, and Senator Robert C. Jubelirer, as President Pro Tempore of the Pennsylvania Senate (respondents),[3] in petitioners' action seeking a declaration that the amendments to Article I, Section 6 and Article I, Section 14 of the Pennsylvania Constitution, adopted by the electorate at the November 3, 1998 General Election, are invalid. For the reasons stated herein, we grant respondents' motion for summary judgment and deny petitioners' motion for summary judgment.

The amendment to Article I, Section 14 added categories of criminal cases in which a person accused of a crime must be denied bail (bail amendment). The amendment to Article I, Section 6 provided the Commonwealth with the same right to trial by jury as is afforded to the accused (jury trial amendment). The amendatory language to each section appeared as a separate ballot question.[4]

In their complaint, petitioners contend that each ballot question actually proposed multiple amendments in violation of Article XI, Section 1, which provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately."[5]

---

1. The decision in this case was reached prior to the date that President Judge Doyle assumed the status of senior judge on January 1, 2002.

2. The decision in this case was reached prior to the date that Judge Kelley assumed the status of senior judge on January 1, 2002.

3. On October 9, 2001, we filed an order granting the stipulation of all parties to allow Matthew J. Ryan and Robert C. Jubelirer to intervene as respondents.

4. Petitioners moved for a preliminary injunction to block the presentations of the ballot questions. We denied petitioners' motion by order dated November 2, 1998.

5. This provision of Article XI, Section 1 is commonly referred to as the "separate vote requirement." Article XI, Section 1 sets forth the procedures for the proposal of amendments by the General Assembly and their adoption by the electorate. Article XI, Section 1 provides in pertinent part:

   Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general elec-

Petitioners further contend that the Attorney General's "plain English statement" regarding each ballot question failed to adequately set forth the purpose, limitations and effects of each amendment in compliance with Section 201.1 of the Pennsylvania Election Code,[6] and that the General Assembly failed to comply with constitutional requirements for voting on the Joint Resolutions, precluding submission of the amendments to the electorate. There being no material factual disputes, the parties have each moved for summary judgment pursuant to Pa. R.C.P. No. 1035.2(1), which provides that a motion for summary judgment shall be granted as a matter of law "whenever there is no genuine issue of any material fact as to a necessary cause of action or defense which could be established by additional discovery or expert report." We will consider each amendment separately in light of the issues raised in the parties' cross motions.

### Bail Amendment to Article I, Section 14

Prior to 1998, Article I, Section 14 of the Pennsylvania Constitution provided as follows:

All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

The General Assembly sought to amend this provision to expand the categories of criminal cases in which bail is disallowed. In April 1995, a majority of the Pennsylvania House and the Senate approved Joint Resolution 1995-3 by a majority vote, which proposed adding the following language to Article I, Section 14: "or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community."[7] In 1998, the General Assembly approved Joint Resolution 1998-1,[8] which proposed the same amendment to Article I, Section 14.

Thereafter, the General Assembly published the proposed bail amendment in newspapers of general circulation, accompanied by a plain English statement prepared by the Attorney General as required by Section 201.1 of the Election Code. The ballot question appeared as follows:

Shall the Pennsylvania Constitution be amended to disallow bail when the proof is evident or presumption great that the accused committed an offense for which

tion, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting there-

on, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

6. Act of June 3, 1937, P.L. 1333, *added by* the Act of February 19, 1986, P.L. 29, 25 P.S. § 2621.1.

7. Joint Resolution No. 3, 1995, P.L. 1153, S.B. No. 12.

8. Joint Resolution No. 1, 1998, P.L. 1327, H.B. No. 1520.

the maximum penalty is life imprisonment or that no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community?

The Attorney General's statement explained:

The purpose of the ballot question is to amend the Pennsylvania Constitution to add two additional categories of criminal cases in which a person accused of a crime must be denied bail. Presently, the Constitution allows any person accused of a crime to be released on bail unless the proof is evident or presumption great that the person committed a capital offense. A capital offense is an offense punishable by death. The Pennsylvania Supreme Court has ruled that a person accused of a crime that is not a capital offense may be denied bail only if no amount or condition of bail will assure the accused's presence at trial.

The ballot question would amend the Constitution to disallow bail also in cases in which the accused is charged with an offense punishable by life imprisonment or in which no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community. The ballot question would extend to these two new categories of cases in which bail must be denied the same limitation that the Constitution currently applies to capital cases. It would require that the proof be evident or presumption great that the accused committed the crime or that imprisonment of the accused is necessary to assure the safety of any person and the community.

The proposed amendment would have two effects. First, it would require a court to deny bail when the proof is evident or presumption great that the accused committed a crime punishable by death or life imprisonment. Second, it would require a court deciding whether or not to allow bail in a case in which the accused is charged with a crime not punishable by death or life imprisonment to consider not only the risk that the accused will fail to appear for trial, but also the danger that release of the accused would pose to any person and the community.

The majority of the electorate voted in favor of the proposed amendment. Article I, Section 14 of the Pennsylvania Constitution, as amended, provides:

All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

## A. Single Amendment

Petitioners assert that the bail amendment to Article I, Section 14 violated the separate vote requirement of Article XI, Section 1 in two ways. Petitioners first contend that the single bail ballot question presented to the electorate in 1998 proposed two independent amendments to Article I, Section 14. They maintain that Article I, Section 14 was (1) amended to expand the capital offenses bail exception to include life imprisonment; and (2) amended to expand the trial attendance purpose of bail to include preventive detention. Petitioners additionally argue that the bail amendment *implicitly* amended Article I, Section 1 (Inherent rights of

mankind), Article I, Section 9 (Rights of accused in criminal prosecutions), Article I, Section 13 (Bail), Article I, Section 25 (Reservation of rights in people) and Article V, Section 10(c) (Judicial administration). Petitioners opine that separate ballot questions should have been submitted to the electorate on each of these issues.

In addressing these arguments, we do not write on a clean slate. In *Pennsylvania Prison Society v. Ridge,* 565 Pa. 526, 776 A.2d 971 (2001), the Pennsylvania Prison Society and others challenged a proposed amendment to Article IV, Section 9 (Pardoning power; Board of Pardons) of the Pennsylvania Constitution. In one ballot question, the General Assembly proposed to amend Article IV, Section 9 by changing the composition of the Board of Pardons, by requiring a majority rather than a two-thirds vote of the Senate to confirm gubernatorial appointees, and by requiring a unanimous, rather than a majority recommendation of the Board as a prerequisite to a gubernatorial pardon or commutation of an individual sentenced to death or life imprisonment. The Pennsylvania Prison Society argued that the ballot question actually proposed multiple amendments to Article IV, Section 9 in a single question in violation of the separate vote requirement. They also argued that the ballot question amended Article IV, Section 8, relating to the Governor's appointing power, by requiring only a majority vote of the Senate to approve the gubernatorial appointments to the Board of Pardons.

In a plurality opinion, Justice, now Chief Justice Zappala, joined by Chief Justice Flaherty, looked to the content of the proposed changes, and analyzed their purpose in order to determine whether they were properly presented in a single ballot question. *See Mellow v. Pizzingrilli,* 800 A.2d 350, 356–57 (Pa.Cmwlth.2002) (discussing *Pennsylvania Prison Soc.,* 565 Pa. 526, 776 A.2d 971). The plurality concluded:

> After examination of the ballot question and the text of the proposed constitutional amendments to Article IV, Section 9, we find that the ballot question violated the separate vote requirement of Article XI, Section 1. The ballot question encompassed two separate amendments to the provisions of Article IV, Section 9, and did not permit the electorate to vote separately upon each amendment. The proposed amendments had *two purposes:* first to restructure the pardoning power of the Board and, second, to alter the confirmation process of the Senate of Pennsylvania for the three members of the Board of Pardons who are appointed by the Governor.
>
> We find that the restructuring of the Board of Pardons so as to change the composition of its members, and to require that its members be unanimous in their recommendation of a pardon in cases where a sentence of death or life imprisonment has been imposed, were properly submitted within a single ballot question. The change in the confirmation process for gubernatorial appointees, however, presented a separate amendment that was required to be voted upon separately.

*Pennsylvania Prison Soc.,* 565 Pa. at 543, 776 A.2d at 981 (emphasis added). The plurality then concluded that because the proposed change in the language pertaining to the confirmation process did not actually produce a "substantive change" in the Senate's confirmation authority, the technical violation of Article XI, Section 1 was an insufficient reason to declare the amendment null and void. *Id.* at 544, 776 A.2d at 982.

The plurality, in part, derived support for its constitutional analysis from the court's holding in *Bergdoll v. Kane,* 557

Pa. 72, 731 A.2d 1261 (1999). In discussing *Bergdoll,* the plurality *in Pennsylvania Prison Society* stated:

> When the ballot question was examined in *Bergdoll,* we analyzed its substantive effect on the Constitution. Although the phrasing of the question itself did not specifically refer to each constitutional provision that would `have effectively been amended by its adoption, *we considered the content, purpose, and effect of the proposed amendments.*

565 Pa. at 542, 776 A.2d at 980 (emphasis added). The amendment at issue in *Bergdoll* proposed two changes to Article I, Section 9 of the Pennsylvania Constitution in a single ballot question (Rights of accused in criminal prosecutions). It proposed to substitute the constitutional language that a person accused of a crime has the right to "meet witnesses face to face" with the language utilized in the federal Constitution, guaranteeing the right to "confront witnesses." The second proposed change provided that the General Assembly could enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotape depositions or testimony by closed-circuit television. The court in *Bergdoll* concluded that the ballot question in fact proposed two separate and distinct amendments to Article I, Section 9, and also implicitly amended Article V, Section 10(c) (Judicial administration).[9] Therefore, as multiple amendments were proposed in one ballot question in violation of Article XI, Section 1, the court rendered that amendment null and void. *Bergdoll,* 557 Pa. at 87, 731 A.2d at 1270.

In *Bergdoll,* the court found that each proposed change to Article I, Section 9 served a distinct and separate purpose: one change purported to alter one of the core rights of the accused in criminal cases. The other change proposed to divest the Pennsylvania Judiciary of its rule making authority under Article V, Section 10(c) of the Pennsylvania Constitution and to vest that authority in the General Assembly. Multiple substantive changes to the Pennsylvania Constitution resulted, which were improperly presented to the electorate in a single ballot question.

In comparison, the amendment proposed in *Pennsylvania Prison Society,* to change the composition of the Board of Pardons, and to require unanimity in recommending a pardon in certain cases, were properly submitted within a single ballot question because these changes had one fundamental purpose and effectuated only one substantive change on our Constitution: to restructure the pardoning power of the Board of Pardons.

■ In the present case, the proposed changes to Article I, Section 14 constitute a single amendment because they serve one core purpose and effectuate only one substantive change: that is, to reinforce

---

**9.** Article V, Section 10(c) provides:

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

public safety by making it more difficult for seriously dangerous accused criminals to obtain bail. Therefore, we reject petitioners' argument that the bail ballot question impermissibly proposed multiple amendments to a single provision.

We further reject petitioners' argument that a single ballot question as to Article I, Section 14 violated the separate vote requirement because other constitutional provisions were "implicitly" amended. The fact that an amendment to one provision of the Constitution may possibly impact other provisions does not violate the separate vote requirement. The Pennsylvania Constitution is a dynamic document in which rights and powers are inextricably intertwined. Any time the electorate votes to amend one provision, other constitutional provisions may be implicitly affected in some way. It would be impractical to subject every conceivable consequence of an amendment to a separate vote. Petitioners' approach would require the General Assembly to pose multiple amendments stating the same thing, "potentially resulting in confusion or chaos," as an elector would hypothetically be able to vote in favor of one amendment and against the others, notwithstanding the fact that passage of all of the amendments would be required in order to effectuate a single change. *See generally Mellow*, 800 A.2d at 358. Logic, therefore, dictates that our inquiry cannot be whether an amendment in some way implicitly impacts another constitutional provision. Rather, our inquiry must be whether an amendment has one core purpose and effectuates one substantive change to the Constitution. Clearly, the bail amendment effectuates only one substantive change: it amends Article I, Section 14 regarding when bail is disallowed in criminal cases. Therefore, under the analysis applied by the plurality in *Pennsylvania Prison Society*, and under the *Bergdoll* analysis, we conclude that the General Assembly properly submitted the bail amendment to Article I, Section 14 to the electorate in a single ballot question.[10]

### B. *Plain English Statement*

Under Section 201.1 of the Election Code, the Attorney General must "prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth...." In the present case, the Attorney General indicated the purpose of the bail amendment by stating: "The purpose of the ballot question is to amend the Pennsylvania Constitution to

**10.** We note that the bail amendment would also survive under the constitutional analysis suggested by Justice Saylor in his concurring opinion in *Pennsylvania Prison Society* in which Justices Castille and Newman joined. Justice Saylor wrote:

> I join the majority in holding that the amendments at issue do not violate the proscriptions of Article XI, Section 1, but disassociate myself from the majority's apparent rejection (made most explicit in its footnote 4) of a subject-matter focus to determine whether alterations are sufficiently interrelated to justify their presentation to the electorate in a single question. *See generally Bergdoll v. Kane*, 557 Pa. 72, 89, 731 A.2d 1261, 1263 (1999) (Saylor, J., concurring).

*Pennsylvania Prison Society*, 565 Pa. at 548, 776 A.2d at 984 (Saylor, J., concurring) (footnote omitted). Justices Saylor, Newman and Castille would have applied the single-subject test utilized by several other jurisdictions. They would have upheld the constitutional changes at issue in *Pennsylvania Prison Society* because they were sufficiently interrelated. *See id.* The ballot question at issue in the instant case relates to a single subject: bail. The proposed changes are clearly interrelated in as much as, together, they will reinforce public safety by making it more difficult for seriously dangerous accused criminals to obtain bail.

add two additional categories of criminal cases in which a person accused of a crime must be denied bail." He stated the limitations of the amendment, as follows:

> The ballot question would extend to these two new categories of cases in which bail must be denied the same limitation that the Constitution currently applies to capital cases. It would require that the proof be evident or presumption great that the accused committed the crime or that imprisonment of the accused is necessary to assure the safety of any person and the community.

Finally, he announced the effects of the proposed amendment, stating:

> The proposed amendment would have two effects. First, it would require a court to deny bail when the proof is evident or presumption great that the accused committed a crime punishable by death or life imprisonment. Second, it would require a court deciding whether or not to allow bail in a case in which the accused is charged with a crime not punishable by death or life imprisonment to consider not only the risk that the accused will fail to appear for trial, but also the danger that release of the accused would pose to any person and the community.

This "plain English statement" sufficiently notified the electors of the purpose, limitations and effects of the bail amendment.

### C. *Joint Resolutions*

■ The General Assembly complied with Article XI, Section 1 by passing the same Joint Resolutions regarding the bail amendment in 1995 and 1998. Joint Resolution 1995–3 read as follows:

> `Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for bail.
>
> The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:
>
> Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:
>
> That section 14 of Article I be amended to read:
>
> § 14. Prisoners to be bailable; habeas corpus.
>
> All prisoners shall be bailable by sufficient sureties, unless for capital offenses [for which the maximum sentence is death or life imprisonment] *OR FOR OFFENSES FOR WHICH THE MAXIMUM SENTENCE IS LIFE IMPRISONMENT or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community* when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

The words in italics were to be added to the amendment and the words in brackets were to be deleted.[11]

Joint Resolution 1998–1 read as follows:[12]

---

11. The instructions accompanying Joint Resolution 1995–3 stated in part that if an amendment is approved, the words underlined will be added to the Constitution and the words in brackets or strikeout type will be deleted. In Joint Resolution 1995–3, the General Assembly used strikeout type to delineate deletions. We have substituted italics for underlining and we have substituted brackets for strikeout type in our citation to Joint Resolution 1995–3.

12. The instructions accompanying Joint Resolution 1998–1 stated in part that the underlined words in the proposed amendment would be added to the Constitution. We have substituted italics in place of underlining in our citation to Joint Resolution 1998–1.

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for bail.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:

That section 14 of Article I be amended to read:

§ 14. Prisoners to be bailable; habeas corpus.

All prisoners shall be bailable by sufficient sureties, unless for capital offenses *or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community* when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

There is no constitutional requirement that the Joint Resolutions must contain identical language. We have held:

Article XI has vested the power to propose amendments in the General Assembly. Other than the express requirements set forth in Article XI, the procedure to be used in proposing such amendments is exclusively committed to the legislature. Because Article XI does not require identical language or content in the *resolutions* (as opposed to the proposed amendment itself), there is no constitutional violation.

*Mellow*, 800 A.2d at 359. Therefore, we conclude that the same amendment was agreed upon by the General Assembly in two successive legislative sessions.

### *Jury Trial Amendment to Article I, Section 6*

Article I, section 6 previously provided as follows:

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.

In 1995, the General Assembly passed Joint Resolution 1996–1 [13] which proposed amending Article I, Section 6 by adding the sentence: "The Commonwealth shall have the same right to trial by jury as does the accused." In 1998, the General Assembly passed Joint Resolution 1998–2,[14] which proposed the same amendment. The General Assembly published the amendment, and at the November 1998 General Election, this amendment was presented to the electorate in the form of a ballot question, which read:

Shall the Pennsylvania Constitution be amended to provide that the Commonwealth shall have the same right to trial by jury in criminal cases as does the accused?

The Attorney General prepared a "plain English statement" to accompany this ballot question as well. The statement explained the purpose of the proposed amendment as follows:

The purpose of the ballot question is to amend the Pennsylvania Constitution to give the Commonwealth, as representative of the people and the victim, the same right to a jury trial in criminal

13. Joint Resolution No. 1, 1996, P.L. 1545, S.B. No. 752.

14. Joint Resolution No. 2, 1998, P.L. 1328, S.B. No. 555.

cases as is currently given to the accused.

Beginning in 1935, Pennsylvania law provided that the accused in a criminal case could waive his or her right to a jury trial as long as both the court and the Commonwealth consented. Because the accused could be tried without a jury only if the Commonwealth consented, the Commonwealth had the same right to a jury trial as did the accused.

With the constitutional amendments of 1968, the Pennsylvania Supreme Court was given the authority to issue rules of procedure. In 1968, the Supreme Court adopted a rule of criminal procedure that continued the statutory practice requiring the Commonwealth's consent when an accused waives the right to a jury trial. In 1973, however, the Supreme Court amended the rule to remove the need for the Commonwealth's consent which took away from the Commonwealth the same right to a jury trial that is given to the accused.

In 1977, the Pennsylvania General Assembly enacted law that returned to the Commonwealth the same right to a jury trial that is given to the accused, but the Pennsylvania Supreme Court declared the 1977 law unconstitutional because it conflicted with the 1973 amendment to the Court's procedural rule.

The effect of the ballot question would be to restore the law to what it was prior to the Supreme Court's 1973 rule, namely, that the Commonwealth would have the same right to a jury trial in a criminal case as does the accused, which is also consistent with federal law. The right of an accused to a jury trial would not be affected by the proposed amendment.

A limitation on the proposed amendment is that it would give the Commonwealth no greater a right to a jury trial than is given to the accused.

This statement was published in accordance with statutory procedures, and the majority of the electorate voted in favor of the amendment. Thus, Article I, section 6, as amended, now mandates:

> Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. Furthermore, in criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.

## A. *Single Amendment*

■ Petitioners argue that the jury trial ballot question violated the separate vote requirement of Article XI, Section 1 because in addition to changing Article I, Section 6, the amendment effectively and implicitly amended Article I, Section 25 (Reservation of rights in the people) and Article V, Section 10(c) (Judicial Administration). Petitioners contend that there should have been a separate ballot question submitted to the electorate and voted upon by the electorate for each of the changes proposed by the jury trial amendment.

Article V, Section 10(c) expressly provides that the Judiciary may prescribe general rules as long as those rules are consistent with the Constitution.[15] Any suggestion that the judicial rule-making power will be substantially changed by the jury trial amendment is specious. In fact, the Pennsylvania Supreme Court has already declared the jury trial amendment

---

15. See footnote 9 for the full text of Article V, Section 10(c).

constitutional. *Commonwealth v. Tharp,* 562 Pa. 231, 754 A.2d 1251 (2000).

Furthermore, Article I, Section 25 [16] grants residual rights to the people, *i.e.,* those rights which are not provided elsewhere in the Constitution. The argument that the jury trial amendment substantively changes this provision is devoid of merit. Clearly, the jury trial amendment produces only one substantive change to our Constitution; that is, to give the Commonwealth the same right to a jury trial as is given to the accused. In addition, all the reasons stated above for rejecting petitioners' argument regarding "implicit" effects of the bail amendment are fully applicable here. Thus, the General Assembly properly presented the jury trial amendment in a single ballot question for purposes of Article XI, Section 1.

### B. *Plain English Statement*

■ The Attorney General's "plain English statement" sufficiently explained the purpose, limitation and effect of the jury trial amendment in compliance with Section 201.1 of the Election Code. The Attorney General could not have explained the purpose of the amendment to Article I, Section 6 more clearly when he stated: "The purpose of the ballot question is to amend the Pennsylvania Constitution to give the Commonwealth, as representative of the people and the victim, the same right to a jury trial in criminal cases as is currently given to the accused." Similarly, the Attorney General clearly informed the electorate of the amendment's limitation

when he stated: "A limitation on the proposed amendment is that it would give the Commonwealth no greater a right to a jury trial than is given to the accused." Furthermore, the Attorney General explained the history behind the amendment and then sufficiently explained the amendment's effect as follows:

> The effect of the ballot question would be to restore the law to what it was prior to the Supreme Court's 1973 rule, namely, that the Commonwealth would have the same right to a jury trial in a criminal case as does the accused, which is also consistent with federal law. The right of an accused to a jury trial would not be affected by the proposed amendment.

### C. *Joint Resolutions*

■ We reject petitioners' argument that the jury trial amendment is invalid because the General Assembly did not pass the same Joint Resolution in 1998 as was passed in 1996. As noted above, while there is a constitutional requirement that the same proposed amendment be passed in two successive sessions of the General Assembly, "Article XI does not require identical language or content in the *resolutions* (as opposed to the proposed amendment itself)." *Mellow,* 800 A.2d at 359.

The text of Joint Resolution 1996–1 read as follows:[17]

> Proposing an amendment to the Constitution of the Commonwealth of Pennsyl-

---

**16.** Article I, Section 25 provides: "To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of the government and shall forever remain inviolate."

**17.** The instructions accompanying Joint Resolution 1996–1 stated in part that if an amendment is approved, the words underlined will

be added to the Constitution and the words in brackets or strikeout type will be deleted. In Joint Resolution 1996–1, the General Assembly used strikeout type to delineate deletions. We have substituted italics for underlining and we have substituted brackets for strikeout type in our citation to Joint Resolution 1996–1.

vania, further providing for trial by jury and waiver of this right.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves a follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:

THAT SECTION 6 OF ARTICLE 1 BE AMENDED TO READ:

§ 6. Trial by Jury.

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. *Furthermore, in criminal cases [the accused may waive the right to a jury trial only with the consent of the Commonwealth.] THE COMMONWEALTH SHALL HAVE THE SAME RIGHT TO TRIAL BY JURY AS DOES THE ACCUSED.*

The text of Joint Resolution 1998–2 read as follows:[18]

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for trial by jury.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:

That section 6 of Article 1 be amended to read:

§ 6. Trial by jury.

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of

the jury in any civil case. *Furthermore, in criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.*

The General Assembly passed the same jury trial amendment in 1996 as in 1998; thus, we discern no violation of Article XI, Section 1.

■ We further reject petitioners' claim that the General Assembly failed to utilize proper procedures in passing the Joint Resolutions regarding the jury trial amendment. Other than the express requirements set forth in Article XI, the procedures to be used in proposing amendments are exclusively committed to the Legislature. *See Mellow,* 800 A.2d at 359. Article XI, Section 1 requires that "[a]mendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon...." Our review of the Legislative Journals reveals that the members' votes were properly taken and entered, and the jury trial amendment was passed in a manner that was consistent with the General Assembly's constitutional duty under Article XI, Section 1. Therefore, we will look no further into the procedures utilized by the General Assembly.

### Conclusion

A motion for summary judgment shall be granted as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert

---

**18.** The instructions accompanying Joint Resolution 1998–2 stated in part that the underlined words in the proposed amendment would be added to the Constitution. We have substituted italics in place of underlining in our citation to Joint Resolution 1998–2.

report. Pa. R.C.P. No. 1035.2(1). In light of our disposition of the issues herein, we grant respondents' motion for summary judgment and deny petitioners' motion for summary judgment.

### ORDER

AND NOW, this 19th day of August, 2002, the respondents' motion for summary judgment in the above-captioned matter is hereby GRANTED and petitioners' motion for summary judgment in the above-captioned matter is hereby DENIED.

Judges SMITH–RIBNER and FRIEDMAN concur in the result only.

Judges COHN and LEAVITT did not participate in the decision of this case.