Robert J. MELLOW, Senator, 22nd District, Michael A. O'Pake, Senator, 11th District, Jack R. Wagner, Senator, 42nd District, Raphael J. Musto, Senator, 14th District, Vincent J. Fumo, Senator, 1st District, Richard A. Kasunic, Senator, 32nd District, J. Barry Stout, Senator, 46th District, Leonard J. Bodack, Senator, 38th District, Gerald J. Lavalle, Senator, 47th District, Vincent J. Hughes, Senator, 7th District, Christine M. Tartaglione, Senator, 2nd District, Jay Costa, Jr., Senator, 43rd District, Shirley M.

---

10. Toms has raised no issue as to the severity of the sanctions imposed; accordingly, any such argument is waived.

Kitchen, Senator, 3rd District, Anthony H. Williams, Senator, 8th District, Lisa M. Boscola, Senator, 18th District, Michael J. Stack, Senator, 5th District, and Sean F. Logan, Senator, 45th District, Petitioners.

v.

Kim PIZZINGRILLI, Secretary of the Commonwealth of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.

Decided May 15, 2002.

Mark A. Packman, Washington, DC, for petitioners.

Calvin R. Koons, Harrisburg, for respondent.

Linda J. Shorey, Harrisburg, for intervenors, Senators Jubelirer and Brightbill.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

Opinion by President Judge COLINS.

## BACKGROUND

This matter is a challenge by 17 Democratic state senators to an amendment to Article II, Section 17 of the Pennsylvania Constitution, adopted by the electorate of this Commonwealth at the Primary Election in May 2001.

Pursuant to Article II, Section 16 of the Pennsylvania Constitution, the Commonwealth is divided into 50 senatorial and 203 representative districts for purposes of representation in the General Assembly. Following each Federal decennial census, these districts must be redrawn to ensure "compact and contiguous" districts "as equal in population as practicable." Article II, Sections 16 and 17. Elections in the new districts occur at the first General Election following the Federal decennial census. Therefore, Representatives in the General Assembly will be elected in 2002 from the districts established following the 2000 census. Because state senators are elected for four-year terms, however, only 25 senators will be elected in 2002. The remaining 25, having been elected in 2000, would have two years of their terms remaining.

The 1991 redistricting resulted in two new senatorial districts that did not in-

clude the residences of the incumbent mid-term senators. In one instance, the 44th Senatorial District, which had previously been in Western Pennsylvania, was re-drawn to include parts of Chester, Lehigh, Berks, and Montgomery Counties. In the other, the 6th Senatorial District, while remaining in Bucks County, no longer included the residence of its incumbent sena-tor. Senators Pecora (44th District) and Lewis (6th District), among others, chal-lenged the reapportionment plan in a di-rect appeal to the Pennsylvania Supreme Court pursuant to Article II, Section 17(d) of the Pennsylvania Constitution. *In re 1991 Pennsylvania Legislative Reappor-tionment Commission,* 530 Pa. 335, 609 A.2d 132 (1992). As to Senators Pecora and Lewis, the Supreme Court concluded that incumbent state senators have no con-stitutionally protected right to have dis-tricts drawn in such a way as to include their residences. 530 Pa. at 353, 609 A.2d at 140. The Supreme Court also noted, however, that senators are not automati-cally expelled from their Senate seats by virtue of the reapportionment, because only the Senate has the authority to judge the qualifications of its members. *Id.* Ulti-mately, Senators Pecora and Lewis contin-ued to serve their respective districts for the remainder of their terms, but did not seek reelection.[1]

In apparent response to the controversy that arose relating to Senators Pecora and Lewis following the 1991 reapportionment, a proposed constitutional amendment was introduced in the General Assembly as House Bill No. 114 of 1998. Article XI, Section 1 mandates that proposed constitu-tional amendments be agreed to by a ma-jority of the members elected to each House, properly entered on the journals

and properly published. In the event that "such proposed amendment or amend-ments" are agreed to by a majority of the members of each House in the "General Assembly next afterwards chosen," the Secretary of the Commonwealth shall again publish the proposal and submit the same to the electors at the ensuing elec-tion.

House Bill No. 114 of 1998 was adopted as Joint Resolution 3 of 1998 (JR1998–3). JR 1998–3 proposed three amendments: (1) a proposal to amend Article II, Section 17(b)(c) and (e), changing the manner in which the chairman of the Legislative Re-apportionment Commission is chosen; (2) the present proposal to amend Article II, Section 17(f), (g), and (h) relating to vacan-cies following reapportionment if the new-ly-reapportioned district does not include the residence from which a member of the Senate was elected; and (3) a proposal to amend Article V, Section 16(b) relating to mandatory retirement ages of judges.

In the "General Assembly next after-wards chosen," Senate Bill No. 231 was introduced, and it was approved by a ma-jority of the members of each House as Joint Resolution 1 of 2000 (JR 2000–1) JR 2000–1 did not contain the proposed amendment to Article II, Section 17(b), (c), and (e) relating to the manner of selecting the chairman of the Legislative Reappor-tionment Commission. The substantive language of the other two proposals was identical to that found in JR 1998–3. JR 2000–1 also provided for the proposed amendment to be placed on the ballot for the 2001 Primary Election.

Pursuant to Section 201.1 of the Penn-sylvania Election Code,[2] the Attorney Gen-eral of Pennsylvania prepared a "Plain En-

---

1. See *The Pennsylvania Manual,* Volume 115 at 3–253, 3–254; Volume 112 at 7–10.

2. Act of June 3, 1937, P.L. 1333, *added by* the Act of Feb. 19, 1986, P.L. 29, 25 P.S. § 2621.1.

glish Statement" advising electors of the effect of the proposed amendment.

On April 23, 2001, petitioners filed a petition for review seeking declaratory and injunctive relief, alleging that placement of the proposed amendment on the ballot would violate the provisions of Article XI, Section 1 as well as Section 201.1 of the Election Code, 25 P.S. § 2621.1 (relating to "Plain English" Statements). Petitioners also filed a motion for special relief, requesting that this Court preliminarily enjoin the respondent Secretary of the Commonwealth from placing the ballot question before the electorate on May 15, 2001, or, in the alternative, refrain from counting the votes cast on the question. Additionally, petitioners filed a motion for summary relief on the merits of the action, asking for the declaratory relief set forth above.

Senior Judge Warren G. Morgan, in a memorandum opinion filed May 8, 2001, denied both motions. On May 15, 2001, the amendment was adopted by a vote of 528,989 "YES" votes and 341,800 "NO" votes. Intervenor's Brief, Appendix 5, citing unofficial 2001 Municipal Election Primary Results as reported by the Secretary of the Commonwealth.

Respondents and Intervenors, Senators Jubelirer and Brightbill, filed preliminary objections to the petition for review in the nature of a demurrer, and Petitioners filed a renewed motion for summary relief. Both are now before us.

## DISCUSSION

The amendment at issue added a new subsection (f) to Article II, Section 17 as follows:

> Any district which does not include the residence from which a member of the Senate was elected whether or not scheduled for election at the next gener-

al election shall elect a Senator at such election.

As noted in Judge Morgan's memorandum opinion, petitioner's constitutional challenges remain justiciable even though the amendment has been adopted by the electorate. *See Stander v. Kelley,* 433 Pa. 406, 250 A.2d 474, *appeal dismissed* 395 U.S. 827, 89 S.Ct. 2130, 23 L.Ed.2d 738 (1969) (a vote of the people cannot validate and constitutionalize anything which violates a provision of the constitution, and that the question of constitutionality is justiciable even after the voters have adopted such a provision.) *Id.* at 412–13, 250 A.2d 474, 250 A.2d at 474. Our Supreme Court has recently considered a challenge to the "Plain English" statement following the adoption of the amendment at issue, implicitly affirming this Court's holding that such a challenge remains justiciable even after adoption of the amendment. *Pennsylvania Prison Society v. Ridge,* 565 Pa. 526, 776 A.2d 971 (2001).

Preliminary objections in the nature of a demurrer should be sustained only if the face of the complaint indicates that the claims may not be sustained and that the law will not permit recovery. Any doubt should be resolved by overruling the demurrer. *Allegheny Sportsmen's League v. Ridge,* 790 A.2d 350 (Pa.Cmwlth.2002).

### A. Two Amendments

In Count I of the Petition for Review, petitioners allege that the amendment violates the provision of Article IX, Section 1, requiring that where two or more amendments are submitted to the electorate, they must be voted upon separately. In order to comprehend petitioners' argument, we must review recent state constitutional decisions in this troublesome area.

The "single amendment" requirement had its origin in the Constitution of 1838 (Article X), which provided in relevant part

That if more than one amendment be submitted, they shall be submitted in such manner and form that the people may vote for or against each amendment separately and distinctly.

The Constitution of 1873 (Article XVIII) introduced the present language, providing that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." Article XVIII was amended on May 16, 1967 and renumbered as the present Article XI. The sole amendment to the relevant language was a stylistic change, replacing "upon" with "on."

By the third decade of the twentieth century, it became apparent that the Constitution of 1873 was in need of substantial amendment.[3] Early efforts under Governors Sproul (1921), Pinchot (1924), and Earle (1935) failed to sustain the necessary momentum for substantial revision.[4] In 1957, Governor Leader appointed a Commission, headed by the late Judge Robert Woodside, that recommended that the necessary changes should be made by amendment rather than by convention.[5]

By 1961, the Woodside proposal was moving forward with support of the Pennsylvania Bar Association and former Attorney General William A. Schnader.[6] The PBA proposed an article-by-article amendment process.[7] This process succeeded in amending six articles of the Constitution of 1873 in "bulk" amendments, submitted to the electorate with the opportunity to vote in favor or against amendment of an entire article, containing numerous substantive changes.[8] We are aware of no challenges to the "bulk" amendments of the 1960's. Finally, a limited Constitutional Convention was called which, in 1968, submitted proposed amendments to the remaining articles, resulting in what is presently known as the Constitution of 1968.

The recent cases relating to this issue began in 1995, when a proposed amendment to Article I, Section 9 of the Constitutional was challenged in *Bergdoll v. Kane*, 694 A.2d 1155 (Pa.Cmwlth.1997), *aff'd*, 557 Pa. 72, 731 A.2d 1261 (1999). The amendment proposed two changes to that section, the first changing the constitutional language that a person accused of a crime has the right to "meet the witnesses face to face." The proposal would have substituted the language utilized in

---

3. Reference Manual No. 1, The Pennsylvania Constitutional Convention, 1967–1968 (Manual), at 6.

4. Id. at 6–8.

5. Id. at 9–10.

6. Id. at 10.

7. Id.

8. See Gubernatorial Proclamation, July 15, 1966, P.L 1945 (1965)(amendments to Article VI, Sections 1, 2, 3, 4, 5, 6 and 7, adopted as a single amendment by the electorate May 17, 1966); Gubernatorial Proclamation, July 7, 1967, P.L 1065 (1967)(amendments to Article I, Sections 15, 19, 25 and 26, adopted as a single amendment by the electorate, May 16, 1967); Gubernatorial Proclamation, July 7, 1967, P.L. 1067(1967)(amendments to Article II, Sections 4 and 6, adopted as a single amendment by the electorate, May 16, 1967); Gubernatorial Proclamation, July 7, 1967, P.L. 1069 (1967)(amendments to Article III, Sections 2, 3, 4, 11, 14, 15, 16, 19, 20, 21, 22, 25, 28, 31 and 33, adopted as a single amendment by the electorate, May 16, 1967); Gubernatorial Proclamation, July 7, 1967, P.L. 1073 (1967)(amendments to Article IV, Sections 1, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 18 and 19, adopted as a single amendment by the electorate, May 16, 1967); Gubernatorial Proclamation, July 7, 1967, P.L. 1077 (1967)(amendments to Article VIIII, Sections 1, 2, 3, 6, 10, 11, 12, 13 and 14, adopted as a single amendment by the electorate, May 16, 1967).

the federal constitution, guaranteeing the right to "confront witnesses." The second proposed change provided that the General Assembly could enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television. Petitioners, criminal defense lawyers (later joined the by Pennsylvania Bar Association) argued, *inter alia,* that the proposed amendment violated the constitutional "separate amendment" requirement.[9]

The "separate amendment" challenge had two components. Petitioners first maintained that two separate and distinct changes were proposed to Article I, Section 9 ("confrontation" and enactment of laws). As a distinct challenge, petitioners argued that the amendment to Article I allowing the General Assembly to enact laws implicitly amended Article V, Section 10(c), granting the Supreme Court the power to prescribe general rules governing practice, procedure, and the conduct of all courts. The Supreme Court concluded that the ballot question in fact proposed two separate and distinct changes. The Court also, however, agreed with the Commonwealth Court that the ballot question implicitly amended Article V, Section 10(c).

Two years after the amendment at issue in *Bergdoll,* another proposed constitutional amendment was placed on the ballot for the 1997 Municipal Election, and it was challenged by the Pennsylvania Prison Society and others. *Pennsylvania Prison Society, et al v. Ridge,* 727 A.2d 632 (Pa. Cmwlth.1999), *rev'd.* 565 Pa. 526, 776 A.2d 971 (2001). This amendment sought to amend Article IV, Section 9, relating to pardons, by changing the composition of the Board of Pardons, requiring a majority, rather than a two-thirds, vote of the Senate to confirm gubernatorial appointees, and requiring a unanimous, rather than a majority, recommendation of the Board as a prerequisite to a gubernatorial pardon or commutation of an individual sentenced to death or life imprisonment.

Respondents in *Pa. Prison Society* argued that only a single question was presented because all of the proposed changes were to one provision of the Constitution and addressed one topic, the Board of Pardons. This argument was adopted by Judge Pellegrini and Judge Kelley in separate dissenting opinions. A five-judge majority, however, in an opinion authored by this jurist, rejected respondents' argument and agreed that the amendment proposed at least four amendments and, accordingly, violated the single-amendment requirement of Article XI, Section 1.

The Supreme Court reversed, filing four separate opinions and producing no clear majority. Justice Zappala, in a plurality opinion in which Chief Justice Flaherty joined and Justices Castille and Saylor joined in part, concluded that the amendment constituted two separate amendments to Article IV, Section 9. Justice Zappala specifically rejected the argument that multiple changes to a single provision constitute a single amendment. Instead, Justice Zappala analyzed the amendment's "substantive effect" on the constitution, and found that the changes to the composition of the Board as well as the requirement for a unanimous recommendation constituted a single amendment. The change in the confirmation process, however, presented a separate amendment and, therefore, violated Article XI, Section 1.

---

**9.** The position of the Pennsylvania Bar Association in *Bergdoll* was curious in light of the fact that the organization which had previously been the principle proponent of wholesale "article-by-article" amendment now challenged an amendment to a single section of Article I.

Justice Zappala further found, however, that the alleged change to the confirmation process did not produce a substantive change in the *Senate's* confirmation authority, as the General Assembly under the prior constitutional provision could "specify by law" whether to confirm members of the Board of Pardon's by two-thirds or majority vote. Because the *Senate's* power was left unchanged, the technical violation of Article XI, Section 1 was an insufficient reason to declare the amendment null and void.

Justices Cappy and Nigro, in separate dissenting opinions, agreed that two amendments were proposed, but disagreed that the lack of a "substantive" change excused the constitutional violation. Both justices would have invalidated the amendment. Justice Saylor filed a concurring opinion, in which Justices Castille and Newman joined, agreeing with the result, but disagreeing with the plurality's rejection of a subject-matter focus. Thus, three justices of the Supreme Court were in agreement with Judges Pellegrini and Kelley, and would view the "single amendment" requirement as encompassing an entire subject or provision.

■ This dispute relating to the scope of the "subject" or "provision" encompassed by a single amendment and its ultimate resolution is not relevant to the present case, because the present amendment is not, in and of itself, two separate amendments, as it accomplishes only one purpose, i.e., cutting short the term of a state senator who no longer resides in his district following reapportionment. Rather, petitioners argue that the provision is invalid because it, like the provision at issue in *Bergdoll*, implicitly amends a separate and distinct section of the Constitution, in this case, Article II, Section 3, which sets the terms of state senators at four years. We disagree.

■ What can be ascertained from a reading of *Bergdoll* and *Pa. Prison Society* is that an amendment to one section or provision of the constitution that implicitly affects the powers of a separate branch of government as set forth in a separate constitutional provision violates the single amendment provision. In *Bergdoll*, the grant of authority to the General Assembly to enact laws relating to child testimony would be in direct derogation of the exclusive grant of rule-making power to the Supreme Court under Article V, Section 10(c). In *Prison Society*, the change in the confirmation process was found *not* to effect a substantive change in the Senate's confirmation power, and therefore it did not expressly or implicitly affect a coordinate branch of government.

The amendment under consideration here results in one substantive change to the constitution: the four-year term of a state senator is cut short where, after reapportionment, the senator is not a resident of the new district. That this change may alter the term of a state senator as set forth in Article II, Section 3 is indisputable. It is also perfectly clear to any elector presented with the question. Unlike *Bergdoll*, it does not implicitly amend the powers of a coordinate branch of government, and an elector presented with the question could not claim ignorance of the fact that the amendment would cut short the term of a state senator, as this is precisely the purpose of the amendment. Rather, this amendment explicitly affects and amends Article II, Section 3 by cutting short the term of an incumbent state senator if his new district does not contain his residence. This is not a question that could be parsed into two separate amendments, one to Article II, Section 17 and one to Article II, Section 3 The adoption of this amendment effects a substantive change to Article II, Section 3. Assuming

that petitioners are correct, two separate amendments stating the same thing would be required, potentially resulting in confusion and chaos, as an elector would hypothetically be able to vote in favor of one amendment and against the other, notwithstanding the fact that passage of both amendments would be required in order to effectuate the change. If one of the two were adopted while the other failed, the Constitution would contain contrary provisions. Accordingly, we hold that the amendment constitutes a single question for the purpose of Article XI, Section 1.

### B. Plain English Statement

■ Petitioners next argue that the Attorney General's Plain English Statement is defective, in that it failed to inform electors that the amendment would amend Article II, Section 3 and thereby potentially shorten the terms of certain senators. Because we have found the amendment itself to constitute a single question, this argument must fail. Moreover, we conclude that a plain reading of the amendment itself as well as the Plain English Statement clearly puts electors on notice that adoption of the amendment would result in shortened terms where applicable. The Plain English Statement is proper.

### C. Identical Resolutions

■ Finally, petitioners argue that the amendment should never have been placed on the ballot because the two Joint Resolutions did not contain identical language, thereby violating the constitutional requirement of Article XI, Section 1. As noted earlier, JR 1998–3 contained language that proposed amending Article II, Section 17(b), (c), and (e), relating to pro-

cedures utilized by the Legislative Reapportionment Commission. JR 1998–3 also included a proposed amendment to the mandatory retirement age of judges [10] and the amendment now at issue. JR 2000–1 contained only the amendment now at issue and the judicial retirement amendment. JR 2000–1 also contained the following language:

> Section 2. Upon the second passage by the General Assembly of THESE TWO proposed constitutional AMENDMENTS, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of THESE proposed constitutional AMENDMENTS. The Secretary of the Commonwealth shall submit BOTH proposed constitutional AMENDMENTS to the qualified electors of this Commonwealth AS SEPARATE BALLOT QUESTIONS at the first primary, general or municipal election occurring at least three months after the proposed constitutional AMENDMENTS ARE passed by the General Assembly which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of 6 Pennsylvania.

We note that in the intervening time between the passage of JR 1998–3 and JR 2000–1, our Supreme Court handed down its decision in *Bergdoll*, addressing for the first time the question of what constitutes "separate amendments." It is therefore

---

**10.** This language was ultimately presented to the electorate separately at the 2001 Primary Election, and was also adopted, amending Article V, Section 16 to provide that judges shall be retired on the last day of the calendar year in which they attain the age of 70 years. Under the prior language, mandatory retirement took effect on the day a judge attained the age of 70 years.

understandable why JR 1998–3 contained multiple provisions and also why JR 2000–1 was amended to contain the language quoted above. *Bergdoll,* however, addressed the issue of multiple questions presented to the electorate. The issue here raised by petitioners is whether Article XI, Section 1 requires that successive resolutions proposing constitutional amendments must contain identical language. We hold that it does not.

The plain language of Article XI, Section 1 relating to passage in two consecutive sessions of the General Assembly speaks of "such proposed amendment or amendments." The constitution does not speak to, or purport to regulate, the legislative vehicle by which such amendment or amendments are approved by the legislature. Indeed, slightly more than a century ago a question arose as to whether a proposed constitutional amendment required the approval of the governor. Our Supreme Court concluded that it did not, noting that a proposed amendment to the Constitution is "not a law, an order, a bill or a resolution, that may thus be proposed and must be enrolled, but, distinctively and exclusively, an amendment to the constitution that must be so introduced and dealt with." *Commonwealth v. Griest,* 196 Pa. 396, 410, 46 A. 505, 508 (1900).

■ Because a proposed constitutional amendment is not a "law," the provisions of Article III relating to the enactment of legislation are inapplicable. Rather, Article XI sets forth "a complete and detailed process for the amendment of [the state constitution]...." *Kremer v. Grant,* 529 Pa. 602, 608, 606 A.2d 433, 436 (1992). In this respect, it is not a legislative act at all, but a separate and specific power granted to the General Assembly, similar to the impeachment and trial powers granted to the House of Representatives and Senate, respectively, under Article VI, Sections 4 and 5. As to the impeachment power, we have held that the trial procedures are within the exclusive power of the Senate and are not subject to invasion by the Courts. *Larsen v. Senate of Pennsylvania,* 166 Pa.Cmwlth. 472, 646 A.2d 694 (1994). Similarly, we believe that Article XI has vested the power to propose amendments in the General Assembly. Other than the express requirements set forth in Article XI, the procedure to be used in proposing such amendments is exclusively committed to the legislature. Because Article XI does not require identical language or content in the *resolutions* (as opposed to the proposed amendment itself), there is no constitutional violation.[11]

For the above reasons, therefore, the preliminary objections of the respondent and intervenors are SUSTAINED.[12]

### ORDER

AND NOW, this 15th day of May 2002, the preliminary objections in the nature of a demurrer filed by respondent and intervenors are SUSTAINED, and the petition for review is DISMISSED.

Judge COHN and Judge LEAVITT did not participate in the consideration or decision in this matter.

---

11. Indeed, the General Assembly may properly choose to consider a proposed constitutional amendment under the title of a "bill," "act," "resolution," or a "mystery wrapped in an enigma," a title that might be more forthright in many instances.

12. Having sustained the preliminary objections, we need not address petitioners' motion for summary relief, which, of course, we would deny for the reasons set forth in this opinion.