# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Senator Jay Costa, Pa. 43rd District, :
Senator Daylin Leach, Pa. 17th District, :
in their Official Capacities, and :
Senator Christine M. Tartaglione, :
Pa. 2nd District, in her Official Capacity :
and individually on behalf of :
qualified electors in the :
Commonwealth of Pennsylvania, :
                   Petitioners :
                               :
           v. : No. 251 M.D. 2016
                      : Heard: April 19, 2016
Secretary Pedro A. Cortes, :
Senator Joseph B. Scarnati, :
Pa. 25th District, and :
Senator Jacob Corman III, :
Pa. 34th District, each in their :
Official Capacities, :
                 Respondents :

BEFORE: HONORABLE P. KEVIN BROBSON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION          FILED: April 20, 2016
BY JUDGE BROBSON

       Presently before the Court for disposition is the application of the Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine M. Tartaglione, duly-elected members of the Pennsylvania Senate (Petitioners), for special relief in the nature of a preliminary injunction. In their application, Petitioners ask that this Court enjoin preliminarily the Secretary of the Commonwealth, the Honorable Pedro A. Cortes (Secretary), from implementing House Resolution 783 ("H.R. 783"). H.R. 783 is a concurrent resolution adopted

by majority votes in both the Pennsylvania House of Representatives, on April 6, 2016, and the Pennsylvania Senate, on April 11, 2016. Among other things, H.R. 783 purports to remove "Proposed Constitutional Amendment 1" from the April 26, 2016 General Primary Election ballot (April 2016 Ballot) and place the same on the November 8, 2016 General Election ballot (November 2016 Ballot). Proposed Constitutional Amendment 1, if approved by electors, would amend section 16(b) of Article V of the Pennsylvania Constitution to provide that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75.[1]

This case does not concern legal validity of the processes and procedures followed by the General Assembly, the Secretary, and the Attorney General of Pennsylvania in securing Proposed Constitutional Amendment 1's place on the April 2016 Ballot.[2] Instead, Petitioners have commenced this action in this Court's original jurisdiction to challenge the legal validity of H.R. 783, the operative clauses of which provide:

> RESOLVED (the Senate concurring), That the Secretary of the Commonwealth remove the ballot question for Proposed Constitutional Amendment 1 from the ballot certification for the primary election on April 26, 2016; and it further
>
> RESOLVED, That the county boards of election remove, to the extent possible, the ballot question for Proposed Constitutional Amendment 1 from the ballot; and be it further

---

[1] Section 16(b) of Article V of the Pennsylvania Constitution currently provides that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 70.

[2] "There is no question that all constitutional and statutory requirements for placing the proposed amendment on the primary ballot were followed." (Petition for Review at 2.)

2

RESOLVED, That the [S]ecretary disregard any vote on Proposed Constitutional Amendment 1 in the primary election on April 26, 2016, and the [S]ecretary not make a tally of votes cast on Proposed Constitutional Amendment 1, and be it further

RESOLVED, That the General Assembly direct the [S]ecretary to place Proposed Constitutional Amendment 1 on the ballot for the general election on November 8, 2016, in the following form:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?;

and be it further

RESOLVED, That, to ensure compliance with section 1 of Article XI of the Constitution of Pennsylvania, the General Assembly direct the secretary to publish the ballot question for Proposed Constitutional Amendment 1 as revised along with the proposed amendment and the plain English statement previously prepared by the Office of Attorney General, in each of the three months prior to the general election on November 8, 2016; and be it further

RESOLVED, That, upon passage by a majority of both houses of the General Assembly, this concurrent resolution be transmitted to the Secretary of the Commonwealth for implementation.

In Count I of their Petition for Review, Petitioners contend that H.R. 783 unconstitutionally infringes on the rights of qualified electors who have or will cast their votes in the April 2016 General Primary Election by absentee ballot. Petitioners contend the right infringed is the right to have one's vote counted: "Qualified electors who have so far cast absentee ballots are entitled to have their votes counted no less than if they had voted at their polling location. . . .

3

Absentee voters who have not yet cast their ballots should have the same rights." (Petition for Review ¶¶ 44, 45.)

In Count II, Petitioners contend that H.R. 783 violates Article III, section 9 of the Pennsylvania Constitution, which provides:

> Every order, resolution or vote, to which the concurrence of both Houses may be necessary, except on the question of adjournment, shall be presented to the Governor and before it shall take effect be approved by him, or being disapproved, shall be repassed by two-thirds of both Houses according to the rules and limitations prescribed in case of a bill.

It is undisputed that H.R. 783 was not presented to the Governor pursuant to this provision of the Pennsylvania Constitution.

Count III of the Petition for Review includes a request for preliminary injunctive relief, but also includes substantive challenges to H.R. 783 not found in Counts I and II. Specifically, Petitioners contend that H.R. 783 compels the Secretary to act contrary to his duties under Article XI, section 1 of the Pennsylvania Constitution, relating to the process to amend the Pennsylvania Constitution. Article XI, section 1 provides, in relevant part:

> Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and *the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published*; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, *the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid*; *and such proposed amendment or amendments shall be submitted*

4

*to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe*; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

(Emphasis added.) Petitioners contend that H.R. 783 purports to prohibit the Secretary from complying with his duties under what is commonly known as the Election Code,[3] specifically Section 201(c) of the Election Code, 35 P.S. § 2621(c), relating to certification to county boards of election of "the form and wording of constitutional amendments and other questions to be submitted to the electors of the State at large" and Section 201(f) of the Election Code, 25 P.S. § 2621(f), which requires the Secretary to "canvass and compute the votes cast . . . upon questions as required by the provisions of this act" and "to proclaim the results of such primaries and elections." Finally, Petitioners contend that under Section 605 of the Election Code, 25 P.S. § 2755, the form of the ballot question is to be determined by the Secretary and the Attorney General and not by the General Assembly. With respect to each of these statutory provisions, Petitioners contend that H.R. 783 affects a change to the law, which can only be done by bill and through the procedures set forth in Article III of the Pennsylvania Constitution.

The merits of Petitioners' claims are not before the Court. Instead, as noted above, the Court now considers whether Petitioners are entitled to preliminary injunctive relief in such form as would compel the Secretary, and by extension the county board of elections, to present Proposed Constitutional

---

[3] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3554.

Amendment 1 to the electors of the Commonwealth for their approval or rejection on the April 2016 Ballot unabated by H.R. 783. Petitioners have the burden of proving their entitlement to such interim relief. *Warehime v. Warehime*, 860 A.2d 41, 47 (Pa. 2004). To meet this burden, Petitioners must establish each of the following "essential prerequisites":

> First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003) (citations omitted). If this Court determines that any one of these essential prerequisites is lacking, Petitioners have failed to meet their burden. *Warehime*, 860 A.2d at 46.

In assessing whether Petitioners have met their burden in this case, the Court has considered the evidence adduced by the parties during the preliminary injunction hearing on April 19, 2016, as well as the parties' written and oral argument on the matter. Based on the evidence, the Court finds that

6

implementation of the General Assembly's will, as set forth in H.R. 783, at this late date in the primary election season imposes substantial burdens on the Secretary, his staff, and the people that work in county voter services and boards of election throughout this Commonwealth. Moreover, the Court is not insensitive to the fact that removing Proposed Constitutional Amendment 1 from the April 2016 Ballot and moving it to the November 2016 Ballot translates into a waste of over a million dollars in taxpayer money spent to advertise a now nonexistent ballot question.

Nonetheless, despite these undesirable consequences, of which the General Assembly was no doubt aware when it considered and passed H.R. 783 by bipartisan majorities in both houses, the General Assembly has determined that Proposed Constitutional Amendment 1 shall be decided in November 2016, and not in April 2016. Article XI, section 1 of the Pennsylvania Constitution vests within the General Assembly the *exclusive* authority to determine the "time" and "manner" amendments are to be submitted to qualified electors for approval. Article XI, section 1 of the Pennsylvania Constitution provides the "complete and detailed process for the amendment of that document." *Kremer v. Grant*, 606 A.2d 433, 436 (Pa. 1992). As this Court noted in *Mellow v. Pizzingrilli*, 800 A.2d 350 (Pa. Cmwlth. 2002) (en banc):

> Because a proposed constitutional amendment is not a "law," the provisions of Article III relating to the enactment of legislation are inapplicable. . . . In this respect, [amendment of the Pennsylvania Constitution] is not a legislative act at all, but a separate and specific power granted to the General Assembly, similar to the impeachment and trial powers granted to the House of Representatives and Senate, respectively, under Article VI, Sections 4 and 5. As to the impeachment power, we have held that the trial procedures are within the exclusive power of the Senate and are not subject to

> invasion by the Courts. Similarly, we believe that Article XI has vested the power to propose amendments in the General Assembly. Other than the express requirements set forth in Article XI, the procedure to be used in proposing such amendments is exclusively committed to the legislature.

*Mellow*, 800 A.2d at 359 (citations omitted); *see also Grimaud v. Commonwealth*, 806 A.2d 923 (Pa. Cmwlth. 2002) (en banc) (following *Mellow*), *aff'd*, 865 A.2d 835 (Pa. 2005).

In *Mellow*, this Court considered several challenges to two constitutional amendments approved by the electorate during the November 3, 1998 General Election. In one of the challenges, the petitioners in that case contended that one of the amendments should be set aside because the joint resolutions passed in 1998 and 2000 by the General Assembly did not contain identical language. This Court rejected that argument, refusing to curb the General Assembly's power under Article XI, section 1 beyond the express limits set forth in that constitutional provision. "Because Article XI does not require identical language or content in the *resolutions* (as opposed to the proposed amendment itself)," this Court opined, "there is no constitutional violation." *Mellow*, 800 A.2d at 359 (emphasis in original).

By its express terms, H.R. 783 sets the time at which and manner by which Proposed Constitutional Amendment 1 is to be submitted to the electorate in that it removes the question from the April 2016 Ballot and moves the question to the November 2016 Ballot. Under *Mellow*, the power of the General Assembly to set the time at which and manner by which amendments to the Pennsylvania Constitution are to be submitted to the electorate is an Article XI, section 1 power. The only express constitutional limitation on time is that it must be submitted at least three months after final agreement by the two houses of the General

8

Assembly, which is not at issue here. Pa. Const. art. XI, § 1. In seeking to enjoin H.R. 783, Petitioners ask this Court to place further limits on this power: a limit that considers the burden placed on those charged by law to implement the General Assembly's exercise of its power; a limit that considers the waste of taxpayer resources occasioned by the same; or a limit that would preclude the General Assembly, once it chooses a particular election as the time for a vote, from changing its collective, albeit by a majority, mind and moving the question to a later election. Such limitations, reasonable as they may seem to some, are simply untethered to the text of the Pennsylvania Constitution.

With this backdrop, the Court now considers whether Petitioners have established all of the essential prerequisites to preliminary injunctive relief, looking first to whether they have established a clear right to relief—*i.e.*, likelihood of success on the merits. "To establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 506 (Pa. 2014).

With respect to Count I of the Petition for Review, which alleges an unconstitutional infringement of the rights of qualified electors, Petitioners have not demonstrated a substantial legal question. Giving legal (constitutional) effect to H.R. 783 means that Proposed Constitutional Amendment 1 will not be considered part of the April 2016 Ballot. *A fortiori*, no elector has a *right* to vote on that question or a *right* to have their vote on that question count as part of the April General Primary election. In the absence of a right to vote, there cannot be voter disenfranchisement.

9

With respect to Count II, which alleges a violation of Article III, section 9 of the Pennsylvania Constitution for failure to present H.R. 783 to the Governor, based on the Pennsylvania Supreme Court's decision in *Kremer* and this Court's decision in *Mellow*, the Court concludes Petitioners have not demonstrated a substantial legal question. The General Assembly's power to dictate the time at which and manner by which a proposed constitutional amendment will be presented to the electorate derives from Article XI, section 1 of the Pennsylvania Constitution. Article III of the Pennsylvania Constitution, relating to legislation, is inapplicable. The gist of H.R. 783, as noted above, is the removal of Proposed Constitutional Amendment 1 from the April 2016 Ballot and the placing of the question before the electorate on the November 2016 Ballot. There is no substantial legal question as to the General Assembly's power and authority to effect this change.

In Count III, Petitioners point to several operative provisions of H.R. 783 that direct the Secretary and county boards of election on how to implement the General Assembly's decision to remove the question from the April 2016 Ballot. Petitioners argue that these provisions conflict with or otherwise eviscerate existing statutory and constitutional duties. The Court is not convinced.

First, Petitioners contend that H.R. 783 compels the Secretary to act contrary to his duties under Article XI, section 1 of the Pennsylvania Constitution, relating to the process to amend the Pennsylvania Constitution. Two of the Secretary's constitutional duties under Article XI, section 1 relate to publication of proposed amendments following each passage by the General Assembly. There is, however, no contention in this case that the Secretary failed to comply with these

10

publication mandates with respect to Proposed Constitutional Amendment 1. The third requires the Secretary to place a proposed constitutional amendment before the electorate "in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe." Pa. Const. art. XI, § 1. As noted above, by H.R. 783, the General Assembly has set the November 2016 General Election as the time that Proposed Constitutional Amendment 1 should be placed before the electorate. Under Article XI, section 1 of the Pennsylvania Constitution, as well as Section 605 of the Election Code, the Secretary must act consistent with the General Assembly's wishes. The provisions of H.R. 783 resolving that the Secretary remove the ballot question for Proposed Constitutional Amendment 1 from the April 2016 Ballot and place the question on the November 2016 Ballot does nothing more than recognize the Secretary's existing legal obligation.

Next, Petitioners contend that H.R. 783 purports to prohibit the Secretary from complying with his duties under Sections 201(c) of the Election Code. Section 201(c) of the Election Code requires the Secretary to do the following:

> To certify to county boards of elections for primaries and elections the names of the candidates for President and Vice-President of the United States, presidential electors, United States senators, representatives in Congress and all State offices, including senators, representatives, and judges of all courts of record, and delegates and alternate delegates to national conventions, and members of State committees, *and the form and wording of constitutional amendments or other questions to be submitted to the electors of the State at large.*

(Emphasis added.) On this issue, H.R. 783 provides that "the Secretary of the Commonwealth remove the ballot question for Proposed Constitutional

11

Amendment 1 from the ballot certification for the primary election on April 26, 2016." As a result of H.R. 783, Proposed Constitutional Amendment 1 was, but is no longer, a question to be submitted to the electors of the State at large on the April 2016 Ballot. Clearly, Section 201(c) of the Election Code does not empower the Secretary to certify to the county boards of elections the form and wording of a constitutional amendment *that is not* to be submitted to the electors of the State at large. Again, then, H.R. 783 appears to do nothing more than echo existing law with respect to the Secretary's duties.[4]

Petitioners further contend that H.R. 783 purports to preclude the Secretary from complying with his duty under Section 201(f) of the Election Code, which requires the Secretary to "canvass and compute the votes cast . . . upon questions as required by the provisions of this act" and "to proclaim the results of such primaries and elections." On this subject, H.R. 783 provides: "RESOLVED, That the [S]ecretary *disregard* any vote on Proposed Constitutional Amendment 1 in the primary election on April 26, 2016, and the Secretary not make a *tally* of votes cast on Proposed Constitutional Amendment 1." (Emphasis added.) Like our analyses above, we look to Section 201(f) of the Election Code and what it does and does not require of the Secretary. By its terms, Section 201(f) of the Election Code only requires the Secretary to canvass and compute the votes cast on questions lawfully placed before the electorate—*i.e.,* "questions as required by the" Election Code. In light of H.R. 783, Proposed Constitutional Amendment 1 was, but is no longer, a question before the electorate, *regardless of its presence on a ballot*. Thus, the Secretary is under no legal obligation to "canvass and compute"

---

[4] In his answer to the application for special relief, the Secretary acknowledges that the official ballot certification to the county boards of elections can be modified to remove Proposed Constitutional Amendment 1 from the certification. (Secretary's Answer at 13, 16.)

12

votes cast on Proposed Constitutional Amendment 1 during the April 2016 Primary Election. A corollary to this legal conclusion is that the Secretary has no authority to canvass and compute votes cast on a question that is *not* before the electorate. In his answer, the Secretary provides that he "would be able to comply with that part of H.R. 783 that directs him to 'disregard any vote on Proposed Constitutional Amendment 1 in the primary election' and to 'NOT MAKE a tally of votes cast.'" (Secretary Answer at 16.)

In his testimony during the preliminary injunction hearing, Jonathan Marks, Commissioner for the Bureau of Commissions, Elections, and Legislation with the Pennsylvania Department of State (Department), testified as to this particular portion of H.R. 783. Mr. Marks also attested to the facts set forth in the Secretary's filed answer to Petitioners' application for special relief. Based on Mr. Marks' testimony and the Court's review of the relevant provisions of the Election Code, the Court finds the language in H.R. 783 relating to canvassing, computing, and tallying of votes ambiguous. The law, however, is not. Section 1402(b) of the Election Code, 25 P.S. § 3152(b), requires each county board of elections to submit returns received for state-level offices to the Secretary by 3:00 a.m. on the day following the election. Nothing in Section 1402(b) provides for the Secretary to "canvass," "compute," or "tally" the submissions from the county board of elections pursuant to this section of the Election Code.

Based on the Secretary's filing in this case, however, as well as Mr. Marks' testimony, to promote transparency and as a service to the public, the Department, for years, has published these "unofficial" returns on the Department's web site as they are received from the counties. In essence, the Department voluntarily makes public the returns reported by the counties *before*

13

those returns are actually "computed," "canvassed," or "tallied." Under the Election Code, the process of canvassing, computing, and tabulating return—*i.e.*, counting—does not occur until days after the primary election. Sections 1403-1405, 1409 of the Election Code, 25 P.S. §§ 3153-3155, 3159. The Secretary's affirmative obligation in this process is set forth in Section 1409 of the Election Code, which provides:

> Upon receiving the certified returns of any primary or election from the various county boards, the Secretary of the Commonwealth shall forthwith proceed to tabulate, compute and canvass the votes cast for all candidates enumerated in section 1408, and upon all questions voted by the electors of the State at large, and shall thereupon certify and file in his office the tabulation thereof.

With respect to Section 1409, Mr. Marks testified credibly that if H.R. 783 were not enjoined, the Department would not include Proposed Constitutional Amendment 1 in this process. The Court sees no violation of law or dereliction in constitutional duty should the Secretary exclude votes cast on Proposed Constitutional Amendment 1 from the process in the Election Code for computing, canvassing, and tabulating results of the April 2016 Primary Election. Indeed, as noted above with respect to Section 201(f) of the Election Code, it appears to the Court that the Secretary has no authority, and thus no duty, to canvas and compute votes cast on a question that is *not* before the electorate. By virtue of the General Assembly's passage of H.R. 783, that question is no longer before the voters in the April 2016 Primary Election.

The Court now returns to the Department's practice of reporting election night returns received from the counties. According to the Secretary, and confirmed by Mr. Marks at the preliminary injunction hearing, to facilitate the

14

counties' compliance with Section 1402(b) of the Election Code and to provide the public service of real-time access to election returns, the Department has developed an election night return software system (ENR system). The ENR system collects the election night returns reported by the counties under the Election Code and maps them to the Department's web site, where the public can view those returns in real time. To ensure that the county data is received and reported accurately on the Department's web site, the Department extensively stages and tests the ENR system in advance of election day. For the April 2016 Primary Election, the ENR system is staged to collect and report any returns received by the counties and reported to the Department under Section 1402(b) of the Election Code. Fifty-five out of sixty-four counties that use the Department's ENR system to comply with Section 1402(b) of the Election Code have successfully tested the ENR system. Mr. Marks testified that the Department could attempt, even at this late date, to change the coding of the ENR system to remove from the Department's web site returns reported by the counties with respect to Proposed Constitutional Amendment 1.[5] Doing so, however, will require over two hundred hours and a total of two days to develop and test. It also comes at some risk to the integrity of reporting all election night data on the Department's web site.

It is not at all clear to the Court that the portion of H.R. 783 resolving that the Secretary "disregard" and "not make a tally" of votes cast on Proposed Constitutional Amendment 1 relates to the ENR system, which is simply a device

---

[5] According to the Secretary and Mr. Marks, however, it is "highly unlikely" that the Department could, at this late date, alter the format of the ENR file the participating counties use to report results to the Secretary in compliance with Section 1402(b) of the Election Code to remove the returns on Proposed Constitutional Amendment 1.

to compile and publicly report each county's compliance with Section 1402(b) of the Election Code. Like other operative portions of H.R. 783 directed toward the Secretary, one can reasonably read this portion to provide only that the Secretary comply with the above-cited sections of the Election Code relating to tabulation, computation, and canvassing. To the extent that the General Assembly intended the provision to apply also to the ENR system, the Court sees no reason to enjoin it, as it seems to the Court to be a purely advisory provision without the force and effect of law. Article XI, section 1 of the Pennsylvania Constitution does not grant the General Assembly the power to direct unilaterally an executive branch agency to refrain from publicly reporting data transmitted to the agency by county boards of election pursuant to statute. *See, e.g.*, *Jefferson Cnty. Court Appointed Employees Ass'n v. Pa. Labor Relations Bd.*, 985 A.2d 697 (Pa. 2009) (discussing separation of powers built into state government).

As the Court noted during the preliminary injunction hearing, given the proximity to the primary election and already-cast absentee ballots, and regardless of remedial measures that will be taken to advise the public that Proposed Constitutional Amendment 1 is not before the electorate on the April 2016 Ballot, votes have and will be cast in favor of and against the measure. It is also invariably true that many voters will go to the polls on April 26, 2016, and *not* vote on the measure. This means, then, that whatever data county boards of election report to the Secretary pursuant to Section 1402(b) of the Election Code with respect to Proposed Constitutional Amendment 1 will be both legally and practically unreliable. As noted above, however, the act of publicly posting Section 1402(b) election night returns from the counties on the Department's website is a voluntary one. The Court agrees with the Secretary that the primary

16

goal is to ensure an orderly and lawful election process. At this point, and in light of the foregoing, whether any changes should be made to the ENR system as a result of H.R. 783 is best left to the discretion of the Secretary.

Petitioners' final substantive challenge in Count III of the Petition for Review is their contention that H.R. 783 violates Section 605 of the Election Code, in that it dictates to the Secretary and the Attorney General the form of the ballot question for Proposed Constitutional Amendment 1 on the November 2016 ballot. Section 605 of the Election Code provides:

> Unless the General Assembly shall prescribe otherwise with respect to any particular proposed amendment or amendments and the manner and time of submitting to the qualified electors of the State any proposed amendment or amendments to the Constitution for the purpose of ascertaining whether the same shall be approved by a majority of those voting thereon, the said amendment or amendments which have heretofore, or which may hereafter be proposed, and which have not been submitted to the qualified electors of the State, shall be submitted to the qualified electors of the State for the purpose aforesaid, at the first municipal or general election at which such amendment or amendments may be legally submitted to the electors, which election shall occur at least three months after the date upon which such proposed amendment or amendments shall have been agreed to for the second time by a majority of the members elected to each house of the General Assembly, as provided in Article Eighteen, section one of the Constitution. Said election shall be conducted on said election day in the manner prescribed by the provisions of this act. *Such proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the Secretary of the Commonwealth with the approval of the Attorney General.*

17

(Emphasis added.) Because this challenge relates to the November 2016 General Election, no immediate or imminent harm is extant, such that the Court must preliminarily enjoin enforcement of the portion of H.R. 783 in question.

Based on the foregoing analysis, the Court concludes that Petitioners have failed to meet their burden of proving a clear right to relief/likelihood of success on the merits with respect to the substantive challenges in their Petition for Review or have failed to prove immediate or irreparable harm related thereto that must be abated by preliminary injunctive relief. Accordingly, because Petitioners had the burden of proving all essential elements to preliminary injunctive relief, Petitioners' application for special relief in the nature of a preliminary injunction will be denied.

Although, in light of the foregoing, the Court need not analyze the other essential elements to preliminary injunctive relief,[6] some additional, albeit brief, analysis is appropriate. As noted above, our Pennsylvania Constitution vests broad power within the General Assembly to decide, by majority vote, the time and manner a proposed constitutional amendment will be placed before the electors of this Commonwealth. In this case, the General Assembly has exercised that power through H.R. 783. There are clearly burdens and consequences that result from the unfortunate timing of the General Assembly's action. Such burdens and consequences that flow from the constitutional actions of any branch of government, however, are not "harms" that can be considered, let alone abated, by enjoining the exercise of a constitutional prerogative. Treating them as such invites this Court to second guess the wisdom of the General Assembly's decisions. The Court is not empowered to do so. *See Sweeny v. Tucker*, 375 A.2d

---

[6] *Allegheny Cnty. v. Commonwealth*, 544 A.2d 1305, 1307 (Pa. 1988).

698 (Pa. 1977) (discussing political question doctrine); *Grimaud v. Commonwealth*, 865 A.2d 835, 847 (Pa. 2005) (applying political question doctrine in challenge to constitutional amendment). A critical role of this Court is to save the public from unlawful or unconstitutional decisions by the other two branches of government, but not unwise ones.[7] When a coordinate branch of government acts lawfully, it reaps what it sows.

In short, the Court is not convinced, at this preliminary stage of these proceedings, that any person's rights have been compromised by the General Assembly's passage of H.R. 783. Based on the evidence adduced during the preliminary injunction hearing, the Court is satisfied that additional burdens, consequences, and in some respect hardships will be borne by the Secretary, the Department, the county boards of elections, and Pennsylvanians to effect the will of the General Assembly reflected in H.R. 783. These, however, are not "harms" that may be considered or abated where, as here, they flow from the exercise of a constitutional prerogative of the General Assembly. Even if the Court were to consider them harms for purpose of preliminary injunctive relief, greater harm of a constitutional dimension would result if this Court were to enjoin enforcement of the otherwise lawful action of a coordinate branch of government. Finally, enjoining H.R. 783 would not be in the public interest as it would only foment further uncertainty among the public as to whether they should vote on Proposed Constitutional Amendment 1 and whether, if they do, their votes will be counted. Less than one week before the Primary Election, the voters deserve certainty and

---

[7] This is not to suggest that H.R. 783 is bereft of reasons supporting the General Assembly's action. The Court's reference to "unwise" actions is to an undefined class of government actions that, although lawful, some may complain are unwise and seek redress from the courts on that basis alone. The courts simply are not the appropriate venue to remedy such complaints.

19

finality. Finally, the public interest is best served by adhering to the text of the Pennsylvania Constitution and respecting the power conferred by the electorate on the General Assembly in Article XI, section 1 of that document.

As a final matter, the Secretary, in his answer to the application for special relief as well as during oral argument, sought "guidance" from the Court as to how he can or should aid and advise county boards of election in implementing H.R. 783. The Court does not normally engage in the practice of providing this type of advice, particularly in the absence of any formal request for such relief. Nonetheless, the Court will remind the Secretary that during this primary election cycle, the Court has issued at least two orders involving the removal/withdrawal of candidates from the April 2016 Ballot, which included certain directives to the Secretary and county boards of election, including the following language:

> []. If the Candidate's name cannot be removed from the ballot, the County Boards of Elections are directed to post notice within each voting station that Candidate has withdrawn from the election and that casting a vote for Candidate, other than a write-in vote, will not be counted.

> []. If after the date of this Order additional absentee ballots are distributed, within those absentee ballots shall be a notice that Candidate has withdrawn from the election and that casting a vote for candidate, other than a write-in vote, will not be counted.

*See In re: Nomination Petition of Lindy Li*, (Pa. Cmwlth., No. 105 M.D. 2016, filed April 1, 2016) (Brobson, J.); *In re: Nomination Petition of Steven B. Larchuck*, (Pa. Cmwlth., No. 221 M.D. 2016, filed March 31, 2016 (Pellegrini, S.J.). The Secretary is certainly free to consider the Court's prior orders touching on the subject of the removal of candidates from the April 2016 Ballot in determining how best to work with county boards of elections to advise voters, absentee and

otherwise, that Proposed Constitutional Amendment 1 is *not* on the April 2016 Ballot, regardless of what the actual ballot may say, and that any votes cast on that question will not be canvassed, counted, or tabulated.

Accordingly, the Court denies Petitioners' application for summary relief in the nature of a preliminary injunction.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Senator Jay Costa, Pa. 43rd District,    :
Senator Daylin Leach, Pa. 17th District, :
in their Official Capacities, and    :
Senator Christine M. Tartaglione,    :
Pa. 2nd District, in her Official Capacity :
and individually on behalf of    :
qualified electors in the    :
Commonwealth of Pennsylvania,    :
               Petitioners    :
   :
         v.    :    No. 251 M.D. 2016
   :
Secretary Pedro A. Cortes,    :
Senator Joseph B. Scarnati,    :
Pa. 25th District, and    :
Senator Jacob Corman III,    :
Pa. 34th District, each in their    :
Official Capacities,    :
               Respondents    :

## ORDER

NOW, this 20th day of April, 2016, upon consideration of Petitioners' application for special relief in the nature of a preliminary injunction, the application is DENIED for the reasons set forth in the accompanying opinion.

 

                              _____
                              P. KEVIN BROBSON, Judge