# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Senator Jay Costa, Pa. 43rd District, :
Senator Daylin Leach, Pa. 17th District, :
in their Official Capacities, and :
Senator Christine M. Tartaglione, Pa. :
2nd District, in her Official Capacity :
and individually on behalf of qualified :
electors in the Commonwealth of :
Pennsylvania, :
                Petitioners :
                 :
        v. : No. 251 M.D. 2016
                 : Argued: June 9, 2016
Secretary Pedro A. Cortes, Senator :
Joseph B. Scarnati, Pa. 25th District, :
and Senator Jacob Corman III, :
Pa. 34th District, each in their :
Official Capacities, :
           Respondents :


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY JUDGE BROBSON       FILED: July 6, 2016


Before the Court are cross-applications for summary relief filed by the Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine M. Tartaglione,[1] duly-elected members of the Pennsylvania Senate (Petitioners), and by the Honorable Joseph B. Scarnati and the Honorable Jacob Corman III, also duly-elected members of the Pennsylvania Senate (Respondents). The

---

[1] Senator Tartaglione brings this action not only in her official capacity but also as an individual.

cross-applications are filed in response to Petitioners' amended petition for review in the nature of a complaint for declaratory and equitable relief, challenging House Resolution 783 of 2016 (H.R. 783).[2] This case involves the extent of the General Assembly's powers under Article XI, section 1 of the Pennsylvania Constitution, which provides, in relevant part:

> Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

---

[2] Although Petitioners filed the amended petition for review after the filing of the cross-applications for summary relief, the parties have had the opportunity to address the amended petition for review in their filings.

2

At issue is whether and, if so, when the General Assembly may, by concurrent resolution, withdraw a proposed constitutional amendment placed on a primary election ballot and place the same proposed constitutional amendment on the next general election ballot. We now deny Petitioners' application for summary relief, grant Respondents' application for summary relief, and enter judgment in favor of Respondents.

## I. BACKGROUND

H.R. 783 is a concurrent resolution adopted by majority votes in both the Pennsylvania House of Representatives, on April 6, 2016, and the Pennsylvania Senate, on April 11, 2016. Among other things, H.R. 783 purports to remove "Proposed Constitutional Amendment 1" from the April 26, 2016 General Primary Election (2016 Primary Election) ballot (April 2016 Ballot) and place the same on the November 8, 2016 General Election (2016 General Election) ballot (November 2016 Ballot). Proposed Constitutional Amendment 1, if approved by electors, would amend section 16(b) of Article V of the Pennsylvania Constitution to provide that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75.[3]

This case does not concern the legal validity of the processes and procedures followed by the General Assembly, the Secretary, and the Attorney General of Pennsylvania in securing Proposed Constitutional Amendment 1's place on the April 2016 Ballot.[4] Instead, Petitioners commenced this action in this

---

[3] Section 16(b) of Article V of the Pennsylvania Constitution currently provides that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 70.

[4] There is no dispute that the constitutional and statutory requirements for placing the proposed constitutional amendment on the April 2016 Ballot had been met prior to the General **(Footnote continued on next page…)**

3

Assembly's passage of H.R. 783. As required by Article XI, section 1 of the Pennsylvania Constitution, the House of Representatives, on June 28, 2013, approved a resolution placing a ballot question before the qualified electors. The ballot question proposed an amendment to Article V, section 16(b) of the Pennsylvania Constitution, which would raise the mandatory judicial retirement age to 75. *See* Pa. House Bill 79 Session of 2013 (H.B. 79). On October 15, 2013, the Senate approved the joint resolution, and, on October 22, 2013, the joint resolution was filed with the Secretary as "Pamphlet Law Resolution No. 3." *See* Legis. Hist. of H.B. 79. Thereafter, as directed by H.B. 79 and as mandated by Article XI, section 1, the Secretary advertised this first passage of the proposed constitutional amendment. On November 17, 2015, both the House of Representatives and Senate approved a joint resolution representing the necessary second passage of the proposed constitutional amendment. *See* Pa. House Bill 90 Session of 2015 (H.B. 90). Consistent with H.B. 90 and Article XI, section 1, the Secretary advertised the proposed amendment for the second time. This advertisement included a "plain English" summary of the proposed amendment, prepared by the Office of Attorney General (OAG). Thereafter, the Secretary submitted the proposed constitutional amendment to the Commonwealth's qualified electors as a ballot question for the 2016 Primary Election, as mandated by H.B. 90.

Several events occurred following the Secretary's submission of the proposed constitutional amendment. On March 6, 2016, Respondent Senators filed an emergency application requesting that the Pennsylvania Supreme Court act in its King's Bench jurisdiction to alter the wording of the proposed constitutional amendment, which at that time read:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70.

Respondent Senators sought to alter the proposed constitutional amendment to read:

> Shall the Pennsylvania Constitution be amended to require that judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 75 years.

By per curiam order, dated March 23, 2016, our Supreme Court denied any relief. In apparent response, on April 6, 2016, the House of Representatives approved H.R. 783, which the Senate adopted on April 11, 2016. Petitioners then filed the action now before the Court. Petitioners sought preliminary injunctive relief, which the Court, by the Honorable P. Kevin Brobson, denied by order dated April 20, 2016, amended April 28, 2016. In its opinion, the Court advised the Secretary to work with the county boards of elections to notify voters "that Proposed

**(Footnote continued on next page…)**

Court's original jurisdiction to challenge the legal validity of H.R. 783, the operative clauses of which provide:

> RESOLVED (the Senate concurring), That the Secretary of the Commonwealth remove the ballot question for Proposed Constitutional Amendment 1 from the ballot certification for the primary election on April 26, 2016; and be it further
>
> RESOLVED, That the county boards of election remove, to the extent possible, the ballot question for Proposed Constitutional Amendment 1 from the ballot; and be it further
>
> RESOLVED, That the [S]ecretary disregard any vote on Proposed Constitutional Amendment 1 in the primary election on April 26, 2016, and the [S]ecretary not make a tally of votes cast on Proposed Constitutional Amendment 1; and be it further
>
> RESOLVED, That the General Assembly direct the [S]ecretary to place Proposed Constitutional Amendment 1 on the ballot for the general election on November 8, 2016, in the following form:
>
>> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?;
>
> and be it further
>
> RESOLVED, That, to ensure compliance with section 1 of Article XI of the Constitution of

---

**(continued…)**

Constitutional Amendment 1 is not on the April 2016 Ballot, regardless of what the actual ballot may say, and that any votes cast on that question will *not* be canvassed, counted, or tabulated." *Costa v. Cortes* (Pa. Cmwlth., No. 251 M.D. 2016, filed April 20, 2016), slip op. at 20-21, amended April 28, 2016.

5

Pennsylvania, the General Assembly direct the [S]ecretary to publish the ballot question for Proposed Constitutional Amendment 1 as revised along with the proposed amendment and the plain English statement previously prepared by the Office of Attorney General, in each of the three months prior to the general election on November 8, 2016; and be it further

RESOLVED, That, upon passage by a majority of both houses of the General Assembly, this concurrent resolution be transmitted to the Secretary of the Commonwealth for implementation.

In Count I of their amended petition for review, Petitioners contend that H.R. 783 violates Article III, section 9 of the Pennsylvania Constitution, because it was not presented to the Governor for approval. In Count II, Petitioners contend that H.R. 783 unconstitutionally infringes on the rights of qualified electors who have or will cast their votes in the 2016 Primary Election by absentee ballot. In Count III, Petitioners essentially request preliminary injunctive relief, which this Court denied by order dated April 20, 2016. In Count IV, Petitioners seek mandamus relief in the form of an "[o]rder requiring the Secretary to accept, count and certify the votes on the ballot question proposing the amendment to [section] 16(b) cast in the April 26, 2016 primary election." (Amended Petition for Review, ¶93.) In Count V of the Amended Petition for Review, Petitioners allege a violation of Article XI, section 1 of the Pennsylvania Constitution, contending that H.R. 783 violates the mandatory advertising requirements of that section. Finally, in Count VI, Petitioners contend that H.R. 783 violates Article III, section 3 of the Pennsylvania Constitution, which requires that any legislative act of the General Assembly be restricted to a single subject.

6

## II. ISSUES PRESENTED

Petitioners and Respondents have filed cross-applications for summary relief under Pa. R.A.P. 1532(b). Petitioners frame the issues to be decided, as follows: (1) whether the General Assembly violated Article III, section 9 of the Pennsylvania Constitution when it used a concurrent resolution to direct the Secretary of the Commonwealth to remove Proposed Constitutional Amendment 1 from the April 2016 Ballot (Count I); (2) whether H.R. 783 violates Article XI, section 1 of the Pennsylvania Constitution by interfering with the three-month advertising requirement of that section (Count V); (3) whether H.R. 783 violates the single-subject requirement of Article III, section 3 of the Pennsylvania Constitution (Count VI); and (4) whether H.R. 783 violates Article XI of the Pennsylvania Constitution by impermissibly disenfranchising the voters of this Commonwealth (Count II). Respondents, by contrast, frame the matter as involving but a single question—*i.e.*, whether the General Assembly permissibly used a concurrent resolution to move Proposed Constitutional Amendment 1 to the November 2016 Ballot, "where Article XI, section 1 of the Pennsylvania Constitution vests the General Assembly with the exclusive authority to determine the time and manner of submitting constitutional amendments to the electorate." (Respondents' Br. at 2.)

In addition to setting forth arguments in their favor for the issues framed by Petitioners, Respondents argue that Petitioners are not entitled to mandamus relief as a matter of law, and, therefore, their count for mandamus relief (Count IV), in which Petitioners seek to compel the Secretary to certify the results of the 2016 Primary Election with respect to Proposed Constitutional Amendment 1, must fail. The Secretary has not filed an application for summary

7

relief. The Secretary has, however, filed a brief in response to Petitioners' application for summary relief, in which the Secretary asserts the same or similar arguments as Respondents.

## III. DISCUSSION

### A. Governing Legal Standards

In evaluating a request for summary relief, the Court applies the same standards that apply on summary judgment. *See Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). Summary relief under Pa. R.A.P. 1532(b), therefore, is appropriate where the moving "party's right to judgment is clear . . . and no issues of material fact are in dispute." *McGarry v. Pa. Bd. of Prob. and Parole*, 819 A.2d 1211, 1214 n.7 (Pa. Cmwlth. 2003).

"In a case like this one, which calls upon the court to construe an Article of the Pennsylvania Constitution, the fundamental rule of construction which guides us is that the Constitution's language controls and must be interpreted in its popular sense, as understood by the people when they voted on its adoption." *Ieropoli v. AC&S Corp.*, 842 A.2d 919, 925 (Pa. 2004). Thus, a provision of the Constitution "will be interpreted, not in a strained or technical manner, but as understood by the people who adopted it." *Blum by Blum v. Merrell Dow Pharm., Inc.*, 626 A.2d 537, 546 (Pa. 1993). Furthermore, the various principles of statutory construction apply with equal force in interpreting the Pennsylvania Constitution. *Booth & Flinn v. Miller*, 85 A. 457, 459 (Pa. 1912) ("The established rules of construction applicable to statutes apply also in the construction of a Constitution."). To that end, we observe that pursuant to Section 1922(3) of the Statutory Construction Act of 1971 (Statutory Construction Act), 1 Pa. C.S. § 1922(3), there is a presumption that "the General Assembly does not intend to violate the Constitution . . . of this Commonwealth." Given the

8

strong presumption of constitutionality under Section 1922(3), "[a] party challenging an act has a heavy burden of persuasion[,]" and "[l]egislation will not be invalidated unless it clearly, palpably and plainly violates the Pennsylvania Constitution." *League of Women Voters of Pa. v. Commonwealth*, 692 A.2d 263, 269-70 (Pa. Cmwlth. 1997). "[A]ny doubts are to be resolved in favor of a finding of constitutionality." *Id.* at 270. Although Section 1922(3) applies to the construction of statutes, as noted above those same principles apply to the construction of constitutional provisions. *See Booth & Flinn*, 85 A. at 459.

Notwithstanding the applicability of statutory construction principles in general,

> [o]ur Supreme Court has repeatedly stated that "nothing short of literal compliance" with this detailed process for the amendment of the fundamental law of our Commonwealth will suffice. Also, our Supreme Court has made clear that the analytical model for deciding a challenge to the enactment of constitutional amendments is not based on the substantial deference afforded to the adoption of legislation.

*Bergdoll v. Commonwealth*, 858 A.2d 185, 193-94 (Pa. Cmwlth. 2004), *aff'd*, 874 A.2d 1148 (Pa. 2005) (internal citations omitted).

### B. Challenge to the Form of H.R. 783 (Count I)

First, we address Petitioners' argument that the General Assembly impermissibly used a concurrent resolution to direct the Secretary of the Commonwealth to remove Proposed Constitutional Amendment 1 from the April 2016 Ballot in violation of Article III, section 9 of the Pennsylvania Constitution. Article III, section 9 provides:

> Every order, resolution or vote, to which the concurrence of both Houses may be necessary, except on the question of adjournment, shall be presented to the Governor and

9

before it shall take effect be approved by him, or being disapproved, shall be repassed by two-thirds of both Houses according to the rules and limitations prescribed in case of a bill.

Petitioners contend that once the General Assembly passed Proposed Constitutional Amendment 1 by joint resolution for the second time, the Secretary was required to publish the proposed amendment and submit it to the qualified electors of the State pursuant to Article XI, section 1 of the Pennsylvania Constitution. It is undisputed that the Secretary complied with the publication requirements of Article XI, section 1 of the Pennsylvania Constitution with respect to the submission of Proposed Constitutional Amendment 1 to the electors on the April 2016 Ballot. The passage of H.R. 783, and this Court's refusal to enjoin its implementation, removed the question from the April 2016 Ballot.[5]

Petitioners assert that the General Assembly, through H.R. 783, created an "entirely different species of legislative action" not contemplated under the General Assembly's Article XI, section 1 power, by: (1) directing the Secretary to remove Proposed Constitutional Amendment 1 from the April 2016

---

[5] As we observed in footnote 4 above, the General Assembly followed the mandates of Article XI, section 1 of the Pennsylvania Constitution in adopting H.B. 79 and H.B. 90 through two joint resolutions. Joint resolutions are the proper mechanism for placing proposed constitutional amendments on a future ballot for the electorate's consideration. *See West Shore Sch. Dist. v. Pa. Labor Relations Bd.*, 570 A.2d 1354, 1357 (Pa. Cmwlth. 1990) ("The General Assembly uses joint resolutions for the sole purpose of proposing constitutional amendments."), *remanded sub nom. Blackwell v. Commonwealth, State Ethics Comm'n*, 589 A.2d 1094 (Pa. 1991). Concurrent resolutions are commonly used "for recalling a bill from the Governor or the other house, returning a bill to the Governor, adjournments sine die or in excess of three days, recesses in excess of a week and memorializing Congress." 101 Pa. Code § 9.43(b). Traditionally, concurrent resolutions have not required approval of the Governor, because they were not considered an exercise of legislative power. *See, e.g., Commonwealth v. Kuphal*, 500 A.2d 1205, 1206-07 (Pa. Super. 1985).

10

Ballot; (2) directing the county boards of elections to remove, to the extent possible, Proposed Constitutional Amendment 1 from the April 2016 Ballot; (3) directing the Secretary to disregard any vote on Proposed Constitutional Amendment 1 in the primary election; (4) prohibiting "the Secretary from making any 'tally of votes cast on Proposed Constitutional Amendment 1'" for the 2016 Primary Election; and (5) directing "the Secretary to alter the ballot question's language" from that which he drafted on his own accord and placed on the April 2016 Ballot." (Petitioners' Br. at 24-25.) Petitioners assert that nothing in Article XI, section 1, provides the General Assembly with the authority to direct the Secretary to remove ballot questions from the ballot once the Secretary has placed the question on the ballot, disregard an election return, prohibit the Secretary from tallying votes, or compel the Secretary to alter the language of a ballot question on a proposed amendment. Rather, Petitioners contend that pursuant to Article III, section 9 of the Pennsylvania Constitution the substance of H.R. 783 should have been presented to the Governor for approval as a legislative bill. Petitioners contend that fundamental separation of powers concerns require each branch of government to operate within its own "separate sphere of power." *Jefferson Cnty. Court Appointed Employees Ass'n v. Pa. Labor Relations Bd.*, 985 A.2d 697, 706 (Pa. 2009). Based on that reasoning, Petitioners contend that the General Assembly could not alter the constitutional amendment process that it set in motion with respect to Proposed Constitutional Amendment 1 without proceeding under Article III, section 9, because Article XI, section 1 does not authorize the actions contained in H.R. 783.

Petitioners next address the "time" and "manner" power in Article XI, section 1 of the Pennsylvania Constitution, which provides that any proposed

constitutional amendment "shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe." Petitioners argue that even if portions of H.R. 783 could be derived from this power, such that it need not be approved by the Governor, H.R. 783's directives to the Secretary fall outside of this power because they are in conflict with what is commonly referred to as the Election Code.[6] Petitioners contend that the Election Code "sets forth the specific contours of the General Assembly's authority to issue directives to the Secretary as an Executive Department official. As that authority derives from the Election Code, H.R. 783 could not alter it without resort to the legislative procedures mandated in Article III." (Petitioners' Br. at 27.) They note that "[b]ecause a resolution does not have the force and effect of law, our Supreme Court has always held that the General Assembly cannot use this legislative device as a substitution for a law." *West Shore Sch. Dist. v. Pa. Labor Relations Bd.*, 570 A.2d 1354, 1357 (Pa. Cmwlth. 1990), *remanded sub nom. Blackwell v. Commonwealth, State Ethics Comm'n*, 589 A.2d 1094 (Pa. 1991). Petitioners contend that H.R. 783 purports to prohibit the Secretary from complying with his duties under Section 201(c) of the Election Code, *as amended*, 25 P.S. § 2621(c), relating to certification to county boards of elections of "the form and wording of constitutional amendments and other questions to be submitted to the electors of the State at large," and Section 201(f) of the Election Code, *as amended*, 25 P.S. § 2621(f), which requires the Secretary to "canvass and compute the votes cast . . . upon questions as required by the provisions of this act" and "to proclaim the results of such

---

[6] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

primaries and elections." Finally, Petitioners contend that under Section 605 of the Election Code, 25 P.S. § 2755, the form of the ballot question is to be determined by the Secretary and the Attorney General and not by the General Assembly. With respect to each of these statutory provisions, Petitioners contend that H.R. 783 affects a change to the law, which can only be accomplished by legislative bill and through the procedures set forth in Article III of the Pennsylvania Constitution.

Respondents counter that it is well-established that Article III of the Pennsylvania Constitution applies only to legislation and is thus inapplicable to the process for amending the Constitution. Instead Article XI, section 1 of the Pennsylvania Constitution provides the "complete and detailed process" for amending the Constitution. *Kremer v. Grant*, 606 A.2d 433, 436 (Pa. 1992). Article XI, section 1 exclusively commits to the General Assembly the power to "prescribe" the "manner" and "time" under which the proposed constitutional amendments "shall be submitted to the qualified electors" of the Commonwealth. *See* Pa. Const. art. XI, § 1. Nothing in Article XI, section 1, however, mandates how the General Assembly must "prescribe" the time at which and manner by which a proposed constitutional amendment will be submitted to the electorate— *i.e.*, whether the General Assembly must do so by joint resolution, concurrent resolution, or otherwise. Rather, the only requirement under Article XI, section 1 is that "a majority of the members elected to each House" agree to the time and manner prescription, which Respondents contend occurred through H.R. 783. Thus, Respondents contend that whether the General Assembly passed a joint resolution or concurrent resolution is irrelevant to Article XI, section 1, as both comply with the constitutional requirements set forth therein.

13

Respondents dispute the General Assembly's characterization of H.R. 783 as representing "an entirely different species of legislative action."[7] They emphasize that Article XI, section 1 expressly empowers the General Assembly to direct the Secretary when (time) and how (manner) to submit a proposed constitutional amendment to the qualified electors of the Commonwealth, with the only limit being that it may not be submitted before three months after being agreed to by both Houses (presumably to allow the Secretary to satisfy the publication requirements). Moreover, Respondents note that Section 605 of the Election Code is consistent with Article XI, section 1 of the Pennsylvania Constitution, in that it too exclusively commits to the General Assembly the power to "prescribe" the "manner and time of submitting to the qualified electors of the State any proposed amendment or amendments to the Constitution for the purpose of ascertaining whether the same shall be approved by a majority of those voting thereon." Accordingly, Respondents maintain that the General Assembly has acted consistent with both the Pennsylvania Constitution and the Election Code by directing the time at which and manner by which the Secretary is to submit Proposed Constitutional Amendment 1 to the electors of the Commonwealth, and, the Secretary has the legal obligation *under both* to follow the prescriptions. Because the General Assembly exercised powers committed exclusively to it, Respondents argue there can be no violation of the separation of powers, and Article III, section 9 is inapplicable.

We now hold that H.R. 783 was a valid exercise of the General Assembly's exclusive power under Article XI, section 1 of the Pennsylvania

---

[7] (Respondents' Br. at 13 (quoting Petitioners' Br. at 24).)

14

Constitution to prescribe both the time at which and manner by which the Secretary is to submit Proposed Constitutional Amendment 1 to the qualified electors of this Commonwealth for their consideration. The Pennsylvania Supreme Court has recognized that Article XI, section 1 of the Pennsylvania Constitution provides the "complete and detailed process for the amendment of that document."[8] *See Kremer*, 606 A.2d at 436. In *Mellow v. Pizzingrilli*, 800 A.2d 350 (Pa. Cmwlth. 2002) (en banc), we explained:

> Because a proposed constitutional amendment is not a "law," the provisions of Article III relating to the enactment of legislation are inapplicable. . . . In this respect, [amendment of the Pennsylvania Constitution] is not a legislative act at all, but a separate and specific power granted to the General Assembly, similar to the impeachment and trial powers granted to the House of Representatives and Senate, respectively, under Article VI, Sections 4 and 5. As to the impeachment power, we have held that the trial procedures are within the exclusive power of the Senate and are not subject to invasion by the Courts. Similarly, we believe that Article XI has vested the power to propose amendments in the General Assembly. Other than the express requirements set forth in Article XI, the procedure to be used in proposing such amendments is exclusively committed to the legislature.

*Mellow*, 800 A.2d at 359 (citations omitted); *see also Grimaud v. Commonwealth*, 806 A.2d 923 (Pa. Cmwlth. 2002) (en banc) (following *Mellow*), *aff'd*, 865 A.2d 835 (Pa. 2005).

---

[8] Our reasoning is consistent with the Court's opinion and order, dated April 20, 2016, amended April 28, 2016, in which the Court denied Petitioners' application for special relief in the nature of a preliminary injunction.

Although *Mellow* addressed challenges regarding only the "manner" of amendments, it is nevertheless instructive here. In *Mellow*, we considered several challenges to two constitutional amendments approved by the electorate during the May 2001 Primary Election. In one of the challenges, the petitioners in that case contended that one of the amendments should be set aside because the joint resolutions passed in 1998 and 2000 by the General Assembly did not contain identical language. This Court rejected that argument, refusing to curb the General Assembly's power under Article XI, section 1 beyond the express limits set forth in that constitutional provision. "Because Article XI does not require identical language or content in the *resolutions* (as opposed to the proposed amendment itself)," we opined "there is no constitutional violation." *Mellow*, 800 A.2d at 359.

By its express terms, H.R. 783 sets both the time at which and manner by which Proposed Constitutional Amendment 1 is to be submitted to the electorate in that it removes the question from the April 2016 Ballot and moves the question to the November 2016 Ballot. Under *Mellow*, the power of the General Assembly to set the time at which and manner by which amendments to the Pennsylvania Constitution are to be submitted to the electorate is an Article XI, section 1 power. Pursuant to Article XI, section 1 of the Pennsylvania Constitution, the power granted therein is *exclusive* to the General Assembly. The only express constitutional limitation on time is that it must be submitted at least three months after final agreement by the two houses of the General Assembly, which is not at issue here.[9] *Id.* We agree with Respondents that nothing in

---

[9] H.R. 783 expressly provides for the re-publication and re-advertising of Proposed Constitutional Amendment 1, as well as the plain English statement of the OAG, in each of the three months prior to the 2016 General Election. Thus, even though the Secretary already had **(Footnote continued on next page…)**

16

Article XI, section 1 mandates how the General Assembly must "prescribe" the time at which and manner by which a proposed constitutional amendment will be presented to the electorate. Thus, it is immaterial whether the General Assembly did so by joint or concurrent resolution, so long as "a majority of the members elected to each House" agreed to the time and manner prescription.[10] *Id.*

Even if we were to agree with Petitioners' general proposition that the General Assembly could not use H.R. 783 to impose directives on the Secretary that are inconsistent with the Secretary's directives set forth in the Election Code, we conclude that H.R. 783 is not so flawed. First, H.R. 783 does not alter the duties of the Secretary or prohibit the Secretary from complying with his duties under Section 201(c) of the Election Code. Section 201(c) of the Election Code requires the Secretary to do the following:

> *To certify to county boards of elections for primaries and elections* the names of the candidates for President and Vice-President of the United States, presidential electors, United States senators, representatives in Congress and all State offices, including senators, representatives, and judges of all courts of record, and delegates and alternate delegates to National conventions, and members of State committees,

---

**(continued…)**

complied with the publication and advertisement requirements of Article XI, section 1 of the Pennsylvania Constitution in advance of the 2016 Primary Election, the General Assembly took this additional step to ensure notice to the electorate by directing the Secretary to re-publish and re-advertise. In his papers submitted to the Court, the Secretary has indicated his intentions to re-publish and re-advertise.

[10] As this Court in *Mellow* observed, "[i]ndeed, the General Assembly may properly choose to consider a proposed constitutional amendment under the title of a 'bill,' 'act,' 'resolution,' or a 'mystery wrapped in an enigma,' a title that might be more forthright in many instances." *Mellow*, 800 A.2d at 359 n.11.

17

and *the form and wording of constitutional amendments or other questions to be submitted to the electors of the State at large.*

(Emphasis added.) On this issue, H.R. 783 provides that "the Secretary of the Commonwealth [shall] remove the ballot question for Proposed Constitutional Amendment 1 from the ballot certification for the primary election on April 26, 2016." As a result of H.R. 783, which this Court refused to enjoin preliminarily, Proposed Constitutional Amendment 1 was not a question submitted to the electorate on the April 2016 Ballot. Clearly, Section 201(c) of the Election Code does not empower the Secretary to certify to the county boards of elections the form and wording of a constitutional amendment *that is not* to be submitted to the electors of the State at large. Thus, H.R. 783 appears to do nothing more than echo existing law with respect to the Secretary's duties.

Second, H.R. 783 does not alter the duties of the Secretary or prohibit the Secretary from complying with his duties under Section 201(f) of the Election Code. Section 201(f) of the Election Code, requires the Secretary to "canvass and compute the votes cast . . . upon questions as required by the provisions of this act" and "to proclaim the results of such primaries and elections." On this subject, H.R. 783 provides: "RESOLVED, That the [S]ecretary *disregard* any vote on Proposed Constitutional Amendment 1 in the primary election on April 26, 2016, and the [S]ecretary not make a *tally* of votes cast on Proposed Constitutional Amendment 1." (Emphasis added.) Like our analyses above, we look to Section 201(f) of the Election Code and what it does and does not require of the Secretary. By its terms, Section 201(f) of the Election Code only requires the Secretary to canvass and compute the votes cast on questions lawfully placed before the electorate—*i.e.*, "questions as required by the" Election Code. In light of H.R. 783, Proposed Constitutional Amendment 1 was not a question submitted

to the electorate, *regardless of its presence on some ballots*.  Thus, the Secretary is under no legal obligation to "canvass and compute" votes cast on Proposed Constitutional Amendment 1 during the 2016 Primary Election.  A corollary to this legal conclusion is that the Secretary has no authority to canvass and compute votes cast on a question that is *not* before the electorate.

Finally, we address Petitioners' claim that H.R. 783 alters the duties of the Secretary or prohibits the Secretary from complying with his duties under Section 605 of the Election Code.  Section 605 of the Election Code provides, in its entirety:

> *Unless the General Assembly shall prescribe otherwise with respect to any particular proposed amendment or amendments and the manner and time of submitting to the qualified electors of the State any proposed amendment or amendments to the Constitution* for the purpose of ascertaining whether the same shall be approved by a majority of those voting thereon, the said amendment or amendments which have heretofore, or which may hereafter be proposed, and which have not been submitted to the qualified electors of the State, *shall be submitted to the qualified electors of the State for the purpose aforesaid, at the first municipal or general election at which such amendment or amendments may be legally submitted to the electors*, which election shall occur at least three months after the date upon which such proposed amendment or amendments shall have been agreed to for the second time by a majority of the members elected to each house of the General Assembly, as provided in Article Eighteen,[11] section one of the Constitution.  Said election shall be conducted on said election day in the manner prescribed by the provisions of this act.  *Such proposed constitutional amendments shall be printed on the ballots or ballot labels in brief*

---

[11] Renumbered as Pa. Const. art. XI, § 1.

19

> *form to be determined by the Secretary of the Commonwealth with the approval of the Attorney General.*

(Emphasis added.) Although not as developed as some of Petitioners' other arguments, Petitioners appear to challenge the ability of the General Assembly, through its Article XI, section 1 "time" and "manner" power, to set the form, or wording, of the constitutional amendment submitted to the electorate. In other words, Petitioners appear to raise a conflict between H.R. 783 and Section 605 of the Election Code.

During oral argument in this matter, the Court expressed concern to the parties that such a conflict could arise if either the Secretary or the Attorney General rejected the form of Proposed Constitutional Amendment 1 set forth in H.R. 783. In his filings with the Court in this matter, however, the Secretary has indicated that he will follow the form of the question set forth in H.R. 783. (Secretary's Br. at 3, 22.) In addition, the Secretary, through his application for leave to file post-submission communication, which the Court granted, submitted a letter by Solicitor General Bruce L. Castor, Jr., dated June 14, 2016, wherein the Solicitor General, on behalf of the OAG, conveyed his approval of the form of Proposed Constitutional Amendment 1, as set forth in H.R. 783. In light of these facts, the debate over whether H.R. 783 conflicts with Section 605 of the Election Code with respect to the form of the ballot question has become academic.

As a general rule, courts will not decide moot cases. "[A] case is moot if there is no actual case or controversy in existence at all stages of the controversy." *Phila. Pub. Sch. Notebook v. Sch. Dist. of Phila.*, 49 A.3d 445, 448 (Pa. Cmwlth. 2012). As this Court explained in *Philadelphia Public School Notebook*:

> Mootness problems arise in cases involving litigants who clearly had one or more justiciable matters at the outset of the litigation, but events or changes in the facts or law occur which allegedly deprive the litigant of the necessary stake in the outcome after the suit is underway.

*Id.* It is well settled that the courts "do not render decisions in the abstract or offer purely advisory opinions." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005). Judicial intervention "is appropriate only where the underlying controversy is real and concrete, rather than abstract." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003).

As with most rules of general application, there are exceptions to the mootness doctrine for circumstances where "(1) the conduct complained of is capable of repetition yet evading review, or (2) involves questions important to the public interest, or (3) will cause one party to suffer some detriment without the Court's decision." *Cytemp Specialty Steel Div., Cyclops Corp. v. Pa. Pub. Util. Comm'n*, 563 A.2d 593, 596 (Pa. Cmwlth. 1989). Notwithstanding these exceptions, however, we note that "'[c]onstitutional questions are not to be dealt with abstractly.'" *Wortex Mills v. Textile Workers Union of Am.*, 85 A.2d 851, 857 (Pa. 1952) (quoting *Bandini Petroleum Co. v. Superior Court*, 284 U.S. 8, 22 (1931); *see In re Gross*, 382 A.2d 116, 120 (Pa. 1978). This Court, therefore, should be even more reluctant to decide moot questions which raise constitutional issues. *See id.* Instead, we "prefer to apply the well-settled principles that [courts] should not decide a constitutional question unless absolutely required to do so." *Krenzelak v. Krenzelak*, 469 A.2d 987, 991 (Pa. 1983); s*ee also Atlantic–Inland, Inc. v. Bd. of Supervisors of West Goshen Twp.*, 410 A.2d 380, 383 (Pa. Cmwlth. 1980) (opining that "a court will not consider a constitutional issue unless it is clearly necessary to do so to dispose of the case before it").

Clearly, there is a prevailing debate over whether the General Assembly has the power, under Article XI, section 1 of the Pennsylvania Constitution and Section 605 of the Election Code, to set the form of the ballot question to the exclusion of the Secretary and the Attorney General. There is, however, no case or controversy because, in light of an intervening event—*i.e.*, approval of the question by the OAG—resolution of that dispute will have no bearing on the form of the question for Proposed Constitutional Amendment 1 on the November 2016 Ballot. The issue, therefore, is moot. The Court declines to consider the dispute under any of the exceptions to the mootness doctrine. The General Assembly infrequently exercises its Article XI, section 1 power with respect to constitutional amendments. If, in the context of future proposed amendments, a dispute arises between the General Assembly, the Secretary, and/or the Attorney General as to which has the ultimate power to set the form of the ballot question to be presented to the electorate, we see no reason why such a dispute could not be resolved at that time.

With respect to the great public importance exception, the Pennsylvania Supreme Court has opined: "It is only in very rare cases where exceptional circumstances exist or where matters or questions of great public importance are involved, that this court ever decides moot questions or erects guideposts for future conduct or actions." *Wortex Mills*, 85 A.2d at 857. Although the substance of Proposed Constitutional Amendment 1 is of great public importance, we are not convinced that resolution of an abstract dispute over who sets the form of the ballot question rises to such a level, particular where, as here, the two branches of government that stand on opposite sides of this hypothetical

22

power struggle agree on the form of the question. We are not inclined to foment discord where there is common ground.

As to the third exception to the mootness doctrine, no harm or detriment will befall Petitioners if we do not resolve this question. As noted above, the form of the question has been set and agreed to by all parties in interest—the General Assembly, the Secretary, and the Attorney General. Petitioners gain nothing and lose nothing by our refusal to decide this moot question. Finally, resolution of this moot question involves consideration of the General Assembly's power under Article XI, section 1 of the Pennsylvania Constitution. As noted above, we are reluctant to resolve constitutional issues in the absence of a true case and controversy. Accordingly, Petitioners' challenge to H.R. 783 as presenting a conflict over which, as between the General Assembly or the Secretary with the approval of the Attorney General, sets the form of Proposed Constitutional Amendment 1 to be submitted to the qualified electors of this Commonwealth is moot.

### C. H.R. 783 and the Three-month Advertising Requirement (Count V)

As discussed above, Article XI, section 1 of the Pennsylvania Constitution provides, in relevant part, that following the passage of a proposed constitutional amendment by a majority of the members of both houses of the General Assembly in two consecutive sessions,

> the Secretary of the Commonwealth shall cause the same again to be published . . . and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe.

23

With regard to the manner of publication, Article XI, section 1 of the Pennsylvania Constitution provides that the proposed amendment "be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published."

Petitioners contend that H.R. 783 compels the Secretary to act contrary to his duties under Article XI, section 1 of the Pennsylvania Constitution, because it prevents him from completing the process to effect the proposed amendment to the Pennsylvania Constitution in the time-frame initially established by the General Assembly and as originally advertised. Petitioners disagree with the Court's earlier interpretation of Article XI,[12] which recognized the General Assembly's exclusive authority over the time and manner of placing a proposed amendment on the ballot as including the authority to move a proposed amendment from a primary election to the next following general election. They argue that if the General Assembly were to have unconstrained power over the "time" and "manner" of the vote on a proposed amendment it could permanently remove a proposed amendment from the ballot at any time before voting begins. Such ability, according to Petitioners, would contravene the intentions of the framers of Article XI.

Petitioners also observe that our Supreme Court has identified two independent reasons for the requirement that there be statewide advertising of a proposed amendment, specifically (1) to inform voters that a proposed constitutional amendment will be placed on the next election ballot and to explain

---

[12] Petitioners refer to the Court's order dated April 20, 2016, amended April 28, 2016, denying Petitioners' application for special relief in the nature of a preliminary injunction.

24

the substance of the proposed amendment, and (2) to provide a three-month window during which voters may ascertain the attitudes of the candidates with regard to the proposed amendment. *See Kremer*, 606 A.2d at 438.[13] With regard to ascertaining attitudes, the three-month window enables the voters to have sufficient time to determine how Senate and House candidates on that same ballot voted on the proposed amendment. Under the current scenario, Petitioners contend that, because H.R. 783 was not advertised, voters were not provided a sufficient opportunity to determine which candidates voted to remove the proposed amendment from the April 2016 Ballot. For these reasons, Petitioners urge the Court to construe Article XI to prohibit any alteration of the vote on a proposed amendment within three months of the originally prescribed election.

Respondents counter that Petitioners' argument is based on the faulty assumption that H.R. 783 is somehow subject to the advertising requirements of Article XI, section 1 of the Pennsylvania Constitution. Respondents contend that, by its express terms, Article XI, section 1 requires only publication of the "proposed amendment or amendments." Pa. Const. art. XI, § 1. Respondents observe that Petitioners ignore that H.R. 783 expressly provides for the re-publication and re-advertising of Proposed Constitutional Amendment 1, as well as the "plain English" statement of the OAG, in each of the three months *prior to* the 2016 General Election. Furthermore, Respondents observe that voters will

---

[13] In *Kremer*, our Supreme Court wrote:

> For if an informed electorate disagrees with the proposed amendments, they will have an opportunity to indicate their displeasure at the ballot box and elect individuals to the next General Assembly with different attitudes.

*Kremer*, 606 A.2d at 438.

have more than three additional months to research and perform due diligence as to Proposed Constitutional Amendment 1 and candidates. Respondents agree that a permanent removal of a proposed constitutional amendment arguably would be contrary to Article XI, section 1, but they observe that no such permanent removal is contemplated by H.R. 783.

We are unswayed by Petitioners' concern that this Court's interpretation of the General Assembly's "time" and "manner" power under Article XI, section 1 is so unfettered that it would allow the General Assembly to thereafter refuse to place a ballot question, passed by both Houses in two consecutive legislative sessions, before voters in the next following general election, *at the latest*. Indeed, such a scenario would not likely survive judicial scrutiny. H.R. 783, however, provides that Proposed Constitutional Amendment 1 will be before voters for their consideration on the next general election ballot following second consideration by both Houses of the General Assembly, that being the November 2016 Ballot.

We are also unpersuaded by Petitioners' argument that H.R. 783 violated the publications requirements of Article XI, section 1. Nothing in Article XI, section 1 of the Pennsylvania Constitution requires publication or advertising of H.R. 783. Two of the Secretary's constitutional duties under Article XI, section 1 are related to publication of proposed amendments following each passage by the General Assembly. There is no contention in this case that the Secretary failed to comply with those publication mandates. In fact, the record is clear that Proposed Constitutional Amendment 1 was advertised in accordance with Article XI, section 1. Moreover, under H.R. 783, Proposed Constitutional Amendment 1 will be re-published and re-advertised, and voters will have

26

additional time to consider the amendment and the attitudes of candidates with respect thereto, so the intent behind Article XI, section 1 will be fulfilled.

The Secretary's third constitutional duty requires the Secretary to place a proposed constitutional amendment before the electorate "in such manner, and at such time *at least three months after being so agreed to by the two Houses*, as the General Assembly shall prescribe." Pa. Const. art. XI, § 1 (emphasis added). It is implicit that the reason why the General Assembly and, by extension, the Secretary must wait *at least* three months before putting the question before the electorate is to provide sufficient time for the Secretary to comply with the three-month advertising period described above. The General Assembly, through H.R. 783, has set the 2016 General Election (the latest possible election) as the time that Proposed Constitutional Amendment 1 should be placed before the electorate. As of the date of this opinion, there is sufficient time for the Secretary to re-publish and re-advertise consistent with Article XI, section 1 of the Pennsylvania Constitution and the goals articulated by the Pennsylvania Supreme Court in *Kremer*.

For these reasons, we conclude that H.R. 783 does not itself cause a violation of the advertising requirements in Article XI, section 1 of the Pennsylvania Constitution.

### D.  H.R. 783 and the Single-Subject Rule (Count VI)

Petitioners argue that if H.R. 783 is examined as if it were a bill, rather than a concurrent resolution, it is facially deficient, as it impermissibly covers more than one subject in violation of Article III, section 3, of the Pennsylvania Constitution, relating to the "[f]orm of *bills*." (Emphasis added.) Article III, section 3 of the Pennsylvania Constitution provides:

> No *bill* shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

(Emphasis added.) Our Supreme Court has identified what it refers to as the "twin requirements" of Article III, section 3, as the requirements "that each bill have only one subject, and that the subject be clearly expressed in the title." *City of Philadelphia*, 838 A.2d at 585. In *City of Philadelphia*, our Supreme Court described the reasons why Pennsylvanians incorporated Article III, section 3 into the Pennsylvania Constitution of 1874, including distrust of corporate influence upon the General Assembly and a resulting desire to make the deliberative process of *legislative enactment* more visible to our citizens. *Id.* at 585-86. By adopting Article III, section 3, Pennsylvanians sought to address a number of practices that members of the General Assembly occasionally employed to obtain *passage of legislation* without subjecting the legislation to an open and deliberative process.

In support of their argument that H.R. 783 violates the single-subject requirement of Article III, section 3 of the Pennsylvania Constitution, Petitioners contend that H.R. 783 attempts to, in part: (1) effect a change in time for the vote on an amendment to Article V, section 16(b) of the Pennsylvania Constitution; (2) direct action by a member of the executive branch—*i.e.*, the Secretary; and (3) modify portions of the Election Code for the primary and general elections of 2016. Petitioners contend that H.B. 783 cannot do all three and still comply with the single-subject requirement of the Pennsylvania Constitution and, therefore, must be held unconstitutional *in toto*. In support of this position, Petitioners rely on *Pennsylvania State Association of Jury Commissioners v. Commonwealth*, 64 A.3d 611 (Pa. 2013), for the proposition that

28

the single-subject requirement is violated where dual functions of government are addressed in the same bill.

Respondents counter that Article III, section 3 of the Pennsylvania Constitution applies only to legislation and is inapplicable to the process for amending the Constitution. Respondents further argue that even if H.R. 783 were governed by Article III, section 3, H.R. 783 is limited to the single-subject matter of prescribing the time and manner by which Proposed Constitutional Amendment 1 is to be submitted to the electorate, and those functions constitutionally rest with the General Assembly.

We agree with Respondents that H.R. 783 is not a legislative bill and, therefore, is not governed by Article III. Rather, as discussed above, actions by the General Assembly relating to the "time" and "manner" of amending the Pennsylvania Constitution are governed exclusively by Article XI, section 1 of the Pennsylvania Constitution, *Mellow*, which does not contain a single-subject requirement.

Assuming, however, Article III, section 3 did apply, H.R. 783 would pass constitutional muster under a single-subject analysis. The stated subject and objective for H.R. 783 is "providing for submission to the electorate of a constitutional amendment on retirement for justices, judges and justices of the peace." H.R. 783. All of the provisions of H.R. 783 assist in carrying out this main objective and are otherwise germane to its stated subject matter. *See City of Philadelphia*, 838 A.2d at 587 ("[T]he strictures of Article III, [s]ection 3 are often satisfied where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise 'germane' to the bill's subject as reflected in its title."). Moreover, as noted above, any portions of H.R. 783 that

Petitioners characterize as "directives" to the Secretary merely recognize the Secretary's duties under Article XI, section 1 of the Pennsylvania Constitution or the Election Code and do not change those duties.

For these reasons, we conclude that H.R. 783 does not violate the single-subject requirement of Article III, section 3 of the Pennsylvania Constitution.

### E. H.R. 783 and Voter Disenfranchisement (Count II)

Petitioners' argument as to why H.B. 783 disenfranchises voters has changed over time. Originally, they argued that voters were disenfranchised because some had cast absentee ballots at the time that H.B. 783 was passed. They now argue that despite H.R. 783 and this Court's refusal to enjoin its implementation, many voters voted on Proposed Constitutional Amendment 1 during the 2016 Primary Election. Failure to count those votes, Petitioners argue, equates to voter disenfranchisement. Petitioners theorize that the electorate will be confused if asked again to vote on Proposed Constitutional Amendment 1 in a revised form, given that voters may not vote on the same amendment within five years. *See* Pa. Const. art. XI, § 1. Petitioners contend that election night results from the 2016 Primary Election show that a majority of voters rejected Proposed Constitutional Amendment 1 and that H.R. 783 essentially nullifies the will of the majority.

Respondents' argument in opposition is succinct and compelling— there can be no voter disenfranchisement in the absence of a right to vote—and we

30

agree with Respondents.[14]  In light of H.B. 783, and this Court's refusal to enjoin its implementation, Proposed Constitutional Amendment 1 was not before the electorate on the April 2016 Ballot, regardless of how successful some or even most counties were at removing the question or informing voters that their votes on the proposed amendment would not be counted.  H.R. 783 in no way disenfranchised voters who had no right to vote on the Proposed Constitutional Amendment 1 in the first place and who were only able to vote because of insufficient measures to fully advise voters that Proposed Constitutional Amendment 1 was not before the electorate on the April 2016 Ballot.

> Moreover, as observed by the Secretary:
>
> Petitioners' position, if adopted, would work the only true disenfranchisement, by denying voters who properly refrained from voting on the questions a say in the outcome.  Whether or not H.R. 783 is a proper exercise of the General Assembly's constitutional authority, the purported "vote" on the proposed amendment during the [2016 Primary Election] cannot, under any rational view, be retroactively deemed official.

(Secretary's Br. at 13.)  Furthermore, the prohibition in Article XI, section 1 of the Pennsylvania Constitution that "no amendment or amendments shall be submitted oftener than once in five years," was also set forth in Article XVIII of the Pennsylvania Constitution of 1874.  *See Stander v. Kelley*, 250 A.2d 474, 480

---

[14] Because we agree with Respondents that there can be no voter disenfranchisement for a question not before the electorate, we need not discuss the parties' arguments regarding the number of voters who did or did not vote on Proposed Constitutional Amendment 1 when some county boards of elections were unable to remove it from the April 2016 Ballot.  We also need not address Respondents' arguments that Petitioners relied upon disputed facts (*i.e.*, "unofficial" and incomplete statewide election returns that are not part of the record) or documents presented at the preliminary injunction hearing.

31

(Pa. 1969). As to both Pennsylvania Constitutions, our Supreme Court interpreted that clause as referring to an amendment that had been previously submitted and rejected and not one that was never before submitted to the electorate. *Id.* For the reasons explained above, Proposed Constitutional Amendment 1 was not submitted to and rejected by the electorate in the 2016 Primary Election. Accordingly, it may be placed before the electorate during the 2016 General Election without violating the five-year provision in Article XI, section 1.

Finally, Petitioners appear to seek relief previously denied by this Court—*i.e.*, consideration of Proposed Constitutional Amendment 1 as part of the 2016 Primary Election and the counting and certification of the votes cast in that election with respect to that ballot question. The law of the case doctrine provides additional grounds to refuse this request. The law of the case doctrine provides that Pennsylvania courts "should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Ario v. Reliance Ins. Co.*, 980 A.2d 588, 597 (Pa. 2009). The Court's order dated April 20, 2016, denied Petitioners' injunctive relief and, by law, conclusively removed Proposed Constitutional Amendment 1 from the April 2016 Ballot. Practicality and the law of the case doctrine dictate that our prior ruling cannot now be undone. As a result, inclusion of Proposed Constitutional Amendment 1 on the November 2016 Ballot is not only appropriate under the law, but it is also necessary in order to afford the entire electorate an opportunity to vote on the amendment.

### F. Mandamus Relief (Count IV)

Respondents argue that Petitioners improperly seek mandamus relief to compel the Secretary to count and certify the votes taken on Proposed Constitutional Amendment 1 in the 2016 Primary Election in accordance with his

constitutional and statutory duties. "A writ of mandamus is 'an extraordinary remedy which compels official performance of a ministerial act or mandatory duty, as opposed to a discretionary act.'" *Griffin v. Pa. Dep't of Corr.*, 862 A.2d 152, 154 n.1 (Pa. Cmwlth. 2004) (quoting *Africa v. Horn*, 701 A.2d 273, 275 (Pa. Cmwlth. 1975)). A writ of mandamus may issue only where "the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists." *Brown v. Levy*, 73 A.3d 514, 516 n.2 (Pa. 2013). Mandamus will not issue where "it is apparent that the writ will be futile or ineffectual by reason of the inability of the respondent to comply therewith." *Commonwealth ex rel. McLaughlin v. Erie Cnty.*, 100 A.2d 601, 604 (Pa. 1953).

Respondents argue that the duty Petitioners demand the Secretary to perform—*i.e.*, counting and certifying the 2016 Primary Election votes—is impossible, because H.R. 783, which this Court declined to enjoin, removed Proposed Constitutional Amendment 1 from the April 2016 Ballot. As a result, not all voters were able to vote on the proposed amendment and any election results were unofficial and incomplete. Also, Respondents argue that Petitioners have not established either a clear right to relief or a corresponding duty on the part of the Secretary, as the Secretary's duty to count and certify votes cast on a ballot question is only triggered when that question is placed before the electorate, which did not occur in connection with the April 2016 Ballot. Finally, Respondents argue that an adequate remedy exists at law, namely that all qualified electors will be permitted to cast their vote on Proposed Constitutional Amendment 1 during the 2016 General Election.

33

We agree with Respondents that Petitioners, as a matter of law, are not entitled to mandamus relief for all the reasons enumerated above. Simply put, the Secretary can have no duty to count and certify votes on a ballot question not submitted to the electorate, and Proposed Constitutional Amendment 1 was not on the April 2016 Ballot. Thus, Petitioners' count for mandamus relief must fail.

## IV.    Conclusion

Accordingly, we deny Petitioners' application for summary relief, grant Respondents' application for summary relief, and enter judgment in favor of Respondents.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Senator Jay Costa, Pa. 43rd District, :
Senator Daylin Leach, Pa. 17th District, :
in their Official Capacities, and :
Senator Christine M. Tartaglione, Pa. :
2nd District, in her Official Capacity :
and individually on behalf of qualified :
electors in the Commonwealth of :
Pennsylvania, :
                Petitioners :
                 :
         v. : No. 251 M.D. 2016
                 :
Secretary Pedro A. Cortes, Senator :
Joseph B. Scarnati, Pa. 25th District, :
and Senator Jacob Corman III, :
Pa. 34th District, each in their :
Official Capacities, :
           Respondents :

# **O R D E R**

AND NOW, this 6th day of July, 2016, upon consideration of the cross-applications for summary relief filed by the Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine M. Tartaglione (Petitioners) and by the Honorable Joseph B. Scarnati and the Honorable Jacob Corman III (Respondents), it is hereby ordered that Petitioners' application for summary relief is DENIED and Respondents' application for summary relief is GRANTED. Judgment is entered in favor of Respondents.

                                                _____
                                              P. KEVIN BROBSON, Judge